No. 88-51

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

LOCAL 1334, LABORERS INTERNATIONAL
UNION OF NORTH AMERICA, AFL-C89,

        Plaintiff and Appellant,

  -vs-

CITY OF GREAT FALLS,

        Defendant and Respondent.

_____

APPEAL FROM: District Court of the Eighth Judicial District,
             In and for the County of Cascade,
             The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Joseph W. Duffy, Great Falls, Montana

    For Respondent:

        David Gliko, City Attorney, Great Falls, Montana

_____

Submitted on Briefs: July 21, 1988

Decided: August 25, 1988

Filed: AUG 2 5 1988

*Ethel M. Harrison*

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is from an order and judgment of the District Court of the Eighth Judicial District, Cascade County, State of Montana, granting the City of Great Falls' motion for summary judgment. The parties' dispute concerns the terms and conditions of a labor agreement between them. We affirm.

Vance Morrison (Morrison), over whom this action arose, is a member of Local 1334, Laborers International Union of North America (Union). He was hired by the City of Great Falls (City) as a "temporary" employee on April 16, 1984, temporarily replacing a permanent employee, Richard Linton (Linton). Linton had suffered an industrial accident on the job and was unable to continue in his capactiy as a full-time meter reader. Morrison was hired to perform Linton's duties as a meter reader until Linton could recover and resume work.

Morrison worked from April 16, 1984 to October 12, 1984, two days short of six calendar months. Linton returned to work on October 15, 1984. However, due to his injury he worked approximately three days, and subsequently returned to workers' compensation status. Thereafter, on November 2, 1984, Morrison was rehired for the second time to replace Linton pending the City's decision on whether to create a permanent meter reader position. Morrison's second hiring period with the City lasted from November 2, 1984 to April 30, 1985, one day short of six calendar months.

The City argues that after Linton was unable to return to work, the City decided to hire a new permanent employee. Further, since the City considered Morrison's position to be temporary, he had not gained recall rights under the

2

seniority clause of the Union contract because he had not been employed for six continuous months.

Morrison, along with 276 other applicants, applied for the permanent meter reader position. Of the 276, fifteen applicants were selected after initial screening. Morrison rated eleventh out of the final fifteen. According to the city attorney, the job was given to an applicant who claimed veteran's preference and scored second out the the final fifteen applicants.

The issues are as follows:

1. Whether the District Court erred in its interpretation of the contract at issue in the plaintiff's complaint.

2. Whether the District Court erred in not directing the matter to be submitted to arbitration.

The appellant, Union is a labor organization certified to represent employees in collective bargaining matters and is so certified to represent employees working for the City. The City is an employer as defined by the Montana Public Employees Collective Bargaining Act. The Union argues that since Linton was unable to work, and the City had "recreated" the temporary meter reader's position and rehired Morrison, and after Morrison's second 179-day layoff, that the City could not advertise for a permanent employee to perform the same duties that both Linton and Morrison had previously performed. The Union argues that after Morrison's second layoff the City violated his Union contract by: (1) creating a temporary position more than one time; (2) discharging Morrison, for the second time, from a position that could not have been temporary at that time; and (3) refusing to recall Morrison to the permanent position.

The Union argues that these matters are provided for by the contract for arbitration and that the City stalled and

3

vacillated on the grievance in such a way that by the passage of time, the potential cost to the City of losing the grievance would exceed $500. Over the $500 mark, the City argued it could invoke Article VII, Step 6, B, of the Grievance Procedure, its working agreement, which excused it from the obligation of arbitration.

The section on arbitration in the contract contained in Article VII, Step 6, B, provides as follows:

> Any grievance involving a monetary issue, including those related to hours and working conditions which could have an apparent economic effect or impact less than five hundred dollars ($500) shall be subject to final and binding arbitration. Any monetary issue, as defined in the last sentence, in excess of five hundred dollars ($500) may be subject to final and binding arbitration only if mutually agreed upon.

It is the City's position that it held the job open for Linton, the injured worker, as long as it could. The reason for creating the temporary position was to help the injured worker and not to create a situation where the person hired in the temporary position could claim seniority benefits. The City also argues that Morrison understood this at the time of the hiring.

The Union argues, contrary to the City's position, that Linton's job was a permanent position and when Morrison was recalled to that position having worked 120 days, he established seniority. Furthermore, Morrison was entitled to continue in the position and, as such an employee and due to his second hiring, he was not in a temporary position and therefore entitled to proceed through the grievance procedure. The Union argues that Morrison had seniority rights because such was established after 120 days. However, as previously noted here, the 120 days were over two periods

of hiring. The City's argument stated that in order to have seniority rights, an employee must work a six-month continuous period.

The trial court found in its findings of fact that Linton was a permanent employee and because of his industrial accident Morrison was hired as a temporary employee. Morrison was hired the second time on a temporary basis pending the City's decision to fill the position on a permanent basis. When it was determined that Linton could not return to work, the City advertised the position and hired a full-time meter reader on August 19, 1985. The District Court noted that Morrison was considered among various applicants for the position. The court found the parties were bound by the collective bargaining agreement entered into between the City and the Union. This collective bargaining agreement was considered by the court in its decision and was attached to the court's findings of fact and conclusions of law as an exhibit. In addition, the District Court found that pursuant to the grievance procedure under the collective bargaining agreement, the Union grieved the failure of the City to hire Morrison as a permanent full-time employee in the full-time meter reader position. Additionally, the City denied the grievance through Steps 1 through 6 and further denied the plaintiff's request for arbitration pursuant to Article VII, Step 6, B, of the agreement.

In granting summary judgment the District Court found that the City properly denied the grievance under the conditions of the collective bargaining agreement. The District Court correctly stated in its conclusions of law that "Morrison's grievance claimed entitlement to the permanent full-time meter reader position inclusive of back-pay cannot be waived as matter of public policy." See,

5

Hoehne v. Sherrodd, Inc. (1983), 205 Mont. 365, 668 P.2d 232. In denying the Union arbitration, the court found the claim well in excess of $500 in monetary value and that the City properly denied the claim for arbitration under Article VII, Step 6, B, of the collective bargaining agreement.

As to summary judgment the court noted that Morrison's employment fell short of six months on both occasions and thereby the position was a temporary position under Article III, Section C of the collective bargaining agreement.

The court also noted that the "temporary" position filled by Morrison was "not renewable" as contemplated by the last phrase of Article III, Section C. The court noted that § 2-18-601, MCA, provides in part:

. . .

> (12) "Continuous employment" means working within the same jurisdiction without a break in service of more than 5 working days or without a continuous absence without pay of more than 15 working days.

> (13) "Break in service" means a period of time in excess of 5 working days when the person is not employed and that severs continuous employment.

The break in Morrison's employment, twenty days, from October 12, 1984 to November 2, 1984, represented a substantial break in the service. Therefore, his employment cannot be considered continuous nor renewable as contemplated by the collective bargaining agreement.

Finally, the District Court found that Morrison did not qualify for "recall" under the seniority clause, Article XII of the collective bargaining agreement, since recall rights are not earned until an employee has been employed for six months of continuous service. We agree. Morrison did not

6

work for six continuous months.  The District Court correctly granted the motion for summary judgment.

Affirmed.

_John Conway Harrison_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_[signature]_
_[signature]_
Justices

Mr. Justice John C. Sheehy, dissenting:


I dissent.

The position under Art. VI, B that any employment dispute having an economic impact more than $500 is "non-grievable" (in the parlance of the parties) guts the protection to employees under the collective bargaining agreement. That position forecloses any arbitration except for the most minuscule of disputes.

What is more important to me in this case is the obvious use by the city of the collective bargaining agreement to engage in the unlawful practice of preventing a temporary employee from accumulation of annual leave time. The provisions of § 2-18-601(12), (13), MCA ("continuous employment" and "break in service"), relied on both by this Court and the city are definitions provided by the statutes for the determination of annual leave time under Part 6, Chapter 18, Title 2 of our codes. The use of these provisions should be limited to interpretations under § 2-18-611, MCA, the computation of annual vacation leave which provides for temporary employees:

> (5) Temporary employees do not earn vacation leave credits, except that a temporary employee who is subsequently hired into a permanent position within the same jurisdiction without a <u>break in service</u>, and temporary employees or <u>employed continuously</u> longer than six months may count as earned leave credits for the immediate term of temporary employment.

It seems obvious that the hiring of Morrison on a temporary basis for less than six months, laying him off for 14 working days and then rehiring him for an additional period of less than six months is a ploy to avoid the accumulation of benefits such as annual vacation leave for

- 8 -

Morrison. Such a procedure is unlawful under § 2-18-621, MCA:

> Unlawful termination. It shall be unlawful for an employer to terminate or separate an employee from his employment in an attempt to circumvent the provisions of 2-18-611, 2-18-612 and 2-18-614. Should a question arise out of this section, it shall be submitted to arbitration as provided in Title 27, Chapter 5, as if an agreement described in 27-5-114 is in effect, unless there is a collective bargaining agreement to the contrary applicable.

Thus not only should the union have the right to submit to arbitration the question of the refusal to hire Morrison, but there is an additional question here of unlawful activity on the part of the city to avoid the accumulation of annual leave which is itself arbitrable by law.

But even if we should conclude that the job renewal issue is not one for arbitration under the collective bargaining agreement, the matter should not end here. Morrison himself, as an individual, has a right to question in the District Court, if the collective bargaining agreement does not apply, his contractual rights both for reemployment and to annual leave time if the city acted unlawfully.

I therefore dissent.

John L. Shelly
_____
Justice

- 9 -