No. 92-572

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MISSOULA COUNTY HIGH SCHOOL
EDUCATION ASSOCIATION,

       Plaintiff and Appellant,

  -vs-

BOARD OF TRUSTEES, MISSOULA
COUNTY HIGH SCHOOLS,

       Defendant and Respondent.

FILED

JUL 28 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Emilie Loring, Attorney at Law, Missoula, Montana

    For Respondent:

        Molly Shepherd; Worden, Thane & Haines, Missoula,
Montana

            Submitted on Briefs:  March 11, 1993

                   Decided:  July 28, 1993

Filed:

_____
               Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The Missoula County High School Education Association appeals from an order of the Fourth Judicial District Court, Missoula County, granting summary judgment in favor of the Missoula County High School Board of Trustees. We affirm.

The sole issue on appeal is whether the District Court erred in concluding that the Missoula County High School Board of Trustees was not required to arbitrate the elimination of a lay reader program.

Prior to the 1991-92 school year, the Missoula County High School District operated a lay reader program in the Missoula County high schools. Under the program, lay readers assisted high school teachers in reading and correcting student papers. In August of 1991, the Missoula County High School Board of Trustees (the Board) informed the teachers that it was eliminating the program.

The teachers' employment was governed by the Master Agreement (the Agreement), a collective bargaining agreement entered into by the Board and the Missoula County High School Education Association (the Association), the teachers' collective bargaining representative. The Agreement sets forth a procedure for resolving grievances. Level Four of the grievance procedure allows the Association to submit a grievance to arbitration if attempts to resolve the dispute pursuant to Levels One through Three are unsuccessful.

On September 10, 1991, the Association filed a grievance with

2

Dennis Kraft, the Missoula County High School Superintendent. The Association asserted that the Board's unilateral elimination of the lay reader program violated Article 1.1 of the Agreement. According to the Association, the elimination of the program constituted a change in working conditions requiring collective bargaining under Article 1.1. The grievance requested that the lay reader program be reinstated. Kraft determined that the elimination of the program was not grievable.

The Association then filed a grievance with the Board. After a hearing, the Board concurred with Kraft and determined that elimination of the program was not grievable under the Agreement.

The Association then notified the Board that it wished to submit the grievance to arbitration. The Board refused to arbitrate elimination of the lay reader program, reasoning that if the matter was not grievable, it could not be arbitrated under the grievance procedures of the Agreement.

On December 12, 1991, the Association filed a complaint requesting the District Court to compel the Board to arbitrate elimination of the program under §§ 27-5-113 and 27-5-115, MCA. Based on stipulated facts, the parties filed cross-motions for summary judgment. On August 24, 1992, the District Court granted summary judgment in favor of the Board and subsequently denied the Association's application to compel arbitration. This appeal follows.

Did the District Court err in concluding that the Missoula

3

County High School Board of Trustees was not required to arbitrate the elimination of the lay reader program?

The District Court concluded that elimination of the lay reader program did not constitute a grievance under the terms of the Agreement and, on that basis, that the Board was not required to arbitrate the matter under the Agreement's grievance procedures. Accordingly, the court granted summary judgment in favor of the Board and denied the Association's application to compel arbitration.

Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. No genuine issues of material fact exist in the case before us; the District Court entered summary judgment based on stipulated facts. Therefore, we review the District Court's conclusion of law regarding arbitrability to determine whether it is correct. See Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

The Association's first contention is that Title 39, Chapter 31, MCA, entitled Collective Bargaining for Public Employees, requires arbitration of the elimination of the lay reader program. The Association asserts that it entered into a collective bargaining agreement containing a grievance procedure culminating in final and binding arbitration, as allowed by § 39-31-306, MCA. The Association then contends that if the Board is not required to submit a grievance to arbitration, Montana's policy of encouraging collective bargaining to arrive at "friendly adjustment" of

4

disputes between public employers and their employees, codified in § 39-31-101, MCA, will be negated.

The statutes governing collective bargaining for public employees do not provide a basis for requiring arbitration of the program elimination. Although the Agreement contains a grievance procedure culminating in arbitration, as allowed in § 39-31-306(2), MCA, the mere existence of this provision does not require all controversies to be arbitrated. By entering into a collective bargaining agreement that provides for arbitration, the parties to the agreement do not consent to submitting all disputes to arbitration. Indeed, § 39-31-306(3), MCA, expressly provides that a collective bargaining agreement shall be enforced "under its terms." Thus, the terms of the agreement determine the arbitrability of a dispute. See Local 1334 v. City of Great Falls (1988), 233 Mont. 432, 760 P.2d 99.

The Association also contends that the District Court was required to order arbitration under Montana's Uniform Arbitration Act, §§ 27-5-111 through 27-5-324, MCA. The Association correctly states that, pursuant to § 27-5-113, MCA, the Uniform Arbitration Act generally applies to collective bargaining agreements. Asserting that the Board has not raised any legal or equitable grounds that would preclude enforcement of a written agreement to arbitrate under § 27-5-114(2), MCA, the Association contends that § 27-5-115, MCA, requires the District Court to order arbitration upon the showing of a written agreement containing an arbitration provision.

5

The flaw in the Association's reliance on the Uniform Arbitration Act is underscored by the Association's reliance on the initial language of § 27-5-115(1), MCA, rather than the entirety of the subsection. Section 27-5-115(1), MCA, provides:

> On the application of a party showing an agreement described in 27-5-114 and the opposing party's refusal to arbitrate, the district court shall order the parties to proceed with arbitration; but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of that issue raised and shall order arbitration if it finds for the applying party or deny the application if it finds for the opposing party.

The Association interprets this subsection to require arbitration, at a party's request, of any and all disputes arising between parties to a collective bargaining agreement containing an arbitration provision. On this basis, it contends that, as a matter of law, the District Court could not refuse to compel arbitration.

The Association's interpretation ignores the specific language contained in § 27-5-115(1), MCA, requiring the District Court to determine the arbitrability of a controversy when one party to the agreement denies that it requires arbitration. Additionally, § 27-5-115(1), MCA, requires the court to deny an application for arbitration if it determines that an agreement to arbitrate the controversy does not exist.

We conclude that the District Court properly followed the procedures set forth in § 27-5-115(1), MCA. The Association sought to compel arbitration and the Board asserted that no agreement to arbitrate elimination of the lay reader program existed. The court

6

reviewed the Agreement, determined that it did not contain an agreement to arbitrate the dispute at issue and, as a result, denied the Association's application for arbitration.

We turn our attention, then, to the terms of the Agreement to ascertain whether the District Court erred in concluding that the Board's elimination of the program was not arbitrable. Article 4.4 of the Agreement allows the Association to submit a "grievance" to arbitration if prior levels of the grievance procedure have not resolved it. Article 1.3 defines grievance as "[a]n alleged violation or misinterpretation of a specific provision of this Agreement." Thus, because the ultimate question of arbitrability depends on whether the dispute constitutes a grievance, we focus on determining whether the Association has alleged a violation or misinterpretation of a specific provision of the Agreement.

The Association contends that the Board violated Article 1.1 of the Agreement, which provides:

> Recognition: The Board hereby recognizes the Association as the exclusive and sole representative for collective bargaining concerning wage, hours, fringe benefits and other conditions of employment, as provided by law, and will meet and confer on such matters as the parties deem appropriate.

The Association construes this provision as an agreement by the Board to collectively bargain wages, hours and other conditions of employment. The Association then alleges that the Board violated Article 1.1 by failing to bargain collectively "conditions of employment" when it eliminated the lay reader program. On this basis, the Association contends that it has alleged a violation of a specific provision which constitutes a "grievance" under Article

7

1.3 of the Agreement. The Association's argument is flawed.

First, an alleged violation of the Board's duty to bargain is not properly resolved by arbitration, the remedy sought here by the Association. Alleged violations of the duty to bargain collectively are subject to procedures and remedies set forth in the unfair labor practices statutes applicable to collective bargaining for public employees. See §§ 39-31-401 through -409, MCA. Specifically, § 39-31-401(5), MCA, provides that the failure of a public employer, such as the Board, to bargain collectively in good faith is an unfair labor practice. Unfair labor practices are remediable by the board of personnel appeals pursuant to §§ 39-31-403, -406, and -408, MCA.

In this same regard, the Association's reliance on First National Maintenance Corp. v. NLRB (1981), 452 U.S. 666, 107 LRRM 2705, is misplaced. First National is an unfair labor practice case alleging a violation of the employer's duty to bargain in good faith a particular decision and its "effects" under the specific language of the National Labor Relations Act (NLRA). It did not entail an effort to compel arbitration and did not necessitate a determination of whether a dispute constituted an arbitrable grievance under the language of a collectively bargained agreement. Nor does First National support in any way the Association's effort here to convert an asserted violation of the duty to bargain in good faith into an arbitrable grievance.

Furthermore, the Association has failed to allege a violation of a "specific provision" of the Agreement that would serve as the

8

basis for a grievance. The Agreement before us contains thirteen titled Articles, each containing a number of separate provisions. For the most part, the provisions are specific statements of rights, obligations and duties by the Board and the Association. A claimed violation of such a provision would fall within the definition of a grievance set forth in Article 1.3 of the Agreement.

Article 1 of the Agreement is entitled "Recognition and Definition" and contains three provisions: 1) the Board's recognition of the Association as the exclusive representative for collective bargaining and agreement to meet and confer as the parties deem appropriate; 2) a definition of "meet and confer" which encompasses the exchange of views and concerns; and 3) definitions of other terms used in the Agreement. These provisions, while separately stated, are for the most part qualitatively different from the specific provisions regarding rights, obligations and duties contained throughout most of the Agreement, the violation of which is intended to form the basis for a grievance. We conclude that the violation of Article 1.1 asserted by the Association--the Board's failure to collectively bargain conditions of employment--is not an alleged violation of a "specific provision" of the Agreement and, therefore, does not constitute a grievance under Article 1.3.

We find support for our conclusion in International Union v. Acme Precision Prod. (E.D.Mich. 1981), 521 F. Supp. 1358. There, a union filed a grievance relating to Acme's unilateral closure of

9

its die casting and pulley manufacturing operations. The collective bargaining agreement defined "grievance," in pertinent part, as a claimed violation of one of its provisions. The sole basis for the grievance was a claimed violation of the agreement's recognition article.

The United States District Court observed that a mere allegation that a collective bargaining agreement has been violated is not sufficient to justify an order to arbitrate; a party must point to a specific provision of the contract to support its demand for arbitration, and the union failed to do so. International Union, 521 F. Supp. at 1361. The court specifically rejected the union's contention that the recognition article provided such a basis, determining that it represented essentially "boilerplate harmony" language. International Union, 521 F. Supp. at 1362.

We hold that the Board's elimination of the lay reader program is not an alleged violation of a specific provision of the Agreement and, therefore, does not constitute a grievance. Because it is not a grievance, the Association is not entitled to arbitrate the dispute under the Agreement's grievance procedures.

Finally, the Association attempts to make an "effects" argument under Union-Scioto Local School District Board of Education v. Unioto Support Association (Ohio App. 1992), 603 N.E.2d 375. In Union-Scioto, a union filed a grievance and sought to arbitrate the school board's reduction of bus drivers' hours and modification of bus routes. The school board refused to arbitrate because the collective bargaining agreement provided that

10

modification of bus routes was not subject to arbitration. In response, the union contended that it was challenging the elimination of work hours, an arbitrable issue.

The Ohio Court of Appeals concluded that arbitration was properly ordered. It determined that the collective bargaining agreement was susceptible to two reasonable but conflicting interpretations regarding the arbitrability of the school board's action. The agreement permitted arbitration if the action actually eliminated work hours; however, if the action merely modified bus routes, it was not arbitrable. Because the parties had agreed to submit their contract interpretation disputes to arbitration, the court reasoned that the contract was properly interpreted by an arbitrator and not a reviewing court. Union-Scioto, 603 N.E.2d at 376.

Union-Scioto is not applicable. It is a "competing interpretations" case, whereas here, the Agreement is not susceptible to two reasonable interpretations regarding the arbitrability of the Board's action, one of which would support the Association's application to compel arbitration. The only provision that the Association asserts has been violated is Article 1.1 and it has not advanced an interpretation of that provision which arguably would compel arbitration. Moreover, nothing in Union-Scioto supports the Association's effort to rely on it for an "effects" argument.

We hold that the District Court correctly concluded that elimination of the lay reader program was not a grievance subject

11

to arbitration. On that basis, it properly granted the Board's motion for summary judgment and denied the Association's application to compel arbitration.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

Justice William E. Hunt, Sr., dissenting.

I dissent. The result of the majority opinion is to dissolve the arbitration agreement between the parties by allowing either party to deny a grievance existed and that there is nothing to arbitrate. It is clear to me that § 39-31-101, MCA, which states that it is the policy of the State of Montana to encourage the practice and procedure of collective bargaining to arrive at friendly adjustment of all disputes between public employers and their employees to promote public business by removing certain recognized sources of strife and unrest, was meant for these facts and this type of controversy. The working conditions for the teachers are certainly changed and come within the meaning of § 39-31-103(10), MCA, which provides for arbitration for a controversy that concern the terms, tenure, or conditions of employment between the parties.

_____
                Justice

13

July 28, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Emilie Loring
Attorney at Law
500 Daly Avenue
Missoula, MT 59801

Molly Shepherd
Worden, Thane & Haines
P. O. Box 4747
Missoula, MT 59806

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M. Tudor_
Deputy