No. 97-537

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 87

JAMES R. RATCHYE and MARY ANN RATCHYE; MARC A.
LIECHTI and MARCEEN L. LIETCHTI; WAYNE L. STEVENS
and DIANE M. STEVENS, individually and as officers and directors
of TROUTBECK RISE HOMEOWNERS ASSOCIATION; and
TROUTBECK RISE HOMEOWNERS ASSOCIATION, INC.,
a Montana corporation,

Plaintiffs and Respondents,

v.

GERALD B.  LUCAS and TROUTBECK LAND DEVELOPMENT
COMPANY, a Montana corporation,

Defendants and Appellants.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

John E. Bohyer and Fred Simpson, Jr.; Phillips & Bohyer, P.C.;
Missoula, Montana

For Respondents:

Randall S. Ogle; Ogle & Worm, PLLP; Kalispell, Montana

Submitted on Briefs: December 23, 1997
Decided:    April 23, 1998
Filed:

_____

Clerk
Justice Jim Regnier delivered the opinion of the Court.

¶1    On July 16, 1997, plaintiffs filed a motion seeking specific performance of a settlement agreement, or, in the alternative, an order requiring arbitration pursuant to the Montana Uniform Arbitration Act.  After a hearing, the District Court entered an order granting the plaintiffs specific performance rather than ordering the parties to submit to arbitration.  Troutbeck Land Development Company and Gerald B. Lucas appeal.  We reverse and remand.

¶2    The following issues are presented on appeal:

¶3    1.    Did the District Court err by denying the defendants' request to submit to arbitration?

¶4    2.    In an arbitration under the settlement agreement, do the Commercial Arbitration Rules of the American Arbitration Association or the Montana Uniform Arbitration Act apply?

FACTUAL AND PROCEDURAL BACKGROUND

¶5    Respondents are homeowners and officers and directors of the Troutbeck Rise Homeowners Association, Inc. (hereinafter "homeowners association" or TRHA).  Their homes are located in the Troutbeck Rise subdivision near Lakeside, Montana.  The subdivision was developed in the 1970s by the appellants in this case, Troutbeck Land Development Company and Gerald B. Lucas (hereinafter "developers" or TLDC).

¶6    When the subdivision was approved by government officials, the developers were required to complete a water system for the subdivision, which included two water holding tanks and two wells.  Both parties dispute whether the developers adequately completed the water system for the subdivision.  The homeowners association contends that the existing water system is inadequate to meet the needs of the subdivision's households.

¶7    On September 21, 1995, the homeowners association filed a complaint in the Eleventh Judicial District Court, Flathead County, seeking to compel the developers to complete the water system as designed and approved in the 1970s.  The developers denied the allegations of the complaint based on their contention that the water system was complete as built.

¶8    Before trial, on October 17, 1996, the parties entered into a settlement agreement.  The parties also executed an addendum to the settlement agreement on November 25, 1996.  The settlement agreement establishes a procedure to assure that the water system of the subdivision was completed on or before July 1, 1998.  Under the agreement, the developers are required to complete the second well and storage tank.  The developers are also required to develop a road called the "Skookum Road connection," subject to the approval of state and local government officials.  The agreement further provides that the developers must post a performance bond or letter of credit at some time if the water system and road is not completed and approved by

July 1, 1997.  Finally, the agreement provides that any dispute  regarding the agreement would be settled by arbitration in accordance with the  Commercial Arbitration Rules of the American Arbitration Association.

¶9   By July 1, 1997, the water system was not completed.  The homeowners association requested that the developers post the required performance bond or letter of credit.  However, the developers declined to do so.  The developers contend that although they have not completed the system and road, they are not required to post the bond or letter of credit until July 1, 1998.

¶10   Subsequently, on July 16, 1997, the homeowners association filed a motion to enforce settlement agreement in the District Court.  The homeowners association requested that the court order specific performance of the settlement agreement by requiring the developers to post a performance bond or letter of credit pursuant to Paragraph 4 of the settlement agreement, or, in the alternative, for an order requiring arbitration pursuant to the Montana Uniform Arbitration Act rather than as established in the settlement agreement. The developers responded, arguing that the court should compel the parties to arbitrate under the Commercial Arbitration Rules of the American Arbitration Association.  The developers also opposed the homeowners association's request for specific performance.

¶11   On September 9, 1997, the District Court entered an order and rationale requiring the developers to post a bond or letter of credit in the amount of $335,715 on or before September 18, 1997.  The court also denied the parties' application to compel arbitration on the grounds that the agreement is clear and "there is . . . no need for the attendant delay and additional expense which would be required to submit this issue to arbitration."

¶12   On September 17, 1997, the developers filed a notice of appeal.  On September 26, 1997, the homeowners association filed a motion to dismiss the developers' appeal with this Court, arguing, first, that the District Court's order was correct in requiring specific performance and not appealable because the homeowners association never refused to arbitrate the dispute and, second, that the order is not a final judgment from which an appeal is appropriate.  On October 7, 1997, this Court issued an order denying the homeowners association's request to dismiss the appeal, concluding that the District Court did deny arbitration and that under § 27-5-324, MCA, the order is appealable. The developers now appeal from the September 8, 1997, order and rationale of the District Court.

ISSUE 1

¶13  Did the District Court err by denying the defendants' request to submit to arbitration?

¶14  We review a district court's conclusion of law regarding arbitrability to determine whether it is correct.  Missoula County High School Educ. Ass'n v. Board of Trustees, Missoula County High Schools (1993), 259 Mont. 438, 442, 857 P.2d 696, 698.  When a court is asked to compel arbitration of a

dispute, the threshold inquiry should be whether the parties agreed to arbitrate. Van Ness Townhouses v. Mar Industries Corp. (9th Cir. 1988), 862 F.2d 754, 756. The rationale for such an inquiry comes from the fact that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Tracer Research Corp. v. National Environmental Services Co. (9th Cir. 1994), 42 F.3d 1292, 1294 (quoting United Steelworkers v. Warrior & Gulf Navigation Co. (1960), 363 U.S. 574, 582, 80 S. Ct. 1347, 1353, 4 L. Ed. 2d 1409, 1417).

¶15  In this case, both the developers and the homeowners association argue about the meaning of certain provisions of the settlement agreement. The pertinent sections of the settlement agreement for this Court's discussion provide:

4.   If the water system is not completed and approved by July 1, 1997, TLDC and Gerald B. Lucas (hereinafter Lucas) agree to post a performance bond or an approved letter of credit in the sum of $335,715.00, in favor of the TLDC and the Troutbeck Rise Homeowners Association (hereinafter TRHA), as security for completion of the water system for Troutbeck Rise Subdivision, Phases I and II, and approval by appropriate state and local officials, on or before July 1, 1998. . . . Only TLDC may take draws against said performance bond or letter of credit prior to July 1, 1998, upon approval of the above referenced engineering certification committee, and only TRHA may take draws against said performance bond or letter of credit, after July, 1, 1998, upon approval of the above referenced engineering certification committee if the water system is not completed, approved and certified by the above referenced engineering certification committee and appropriate state and local officials by July 1, 1998.

. . . .

12.   Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Arbitration shall be conducted by a panel of three (3) arbitrators, one arbitrator appointed by each of the parties hereto, and the third arbitrator appointed by the first two arbitrators so appointed.

. . . .

14. No remedy referred to in this Agreement is intended to be exclusive, but shall be cumulative and in addition to any other remedy referred to herein or otherwise available to either party at law or in equity. Either party shall have the remedy of specific performance of this Agreement.

¶16  The developers argue that the District Court erred in ordering specific

performance and not granting the parties' application to compel arbitration under the settlement agreement. The developers assert that the court was without power to order specific performance because the settlement agreement in Paragraph 12 specifically provided for arbitration. The developers contend that a court may refuse to enforce a settlement agreement only under certain grounds available at law or equity which are sufficient to revoke a contract. See § 27-5-114(2), MCA. Moreover, the developers argue that the court's refusal to order arbitration was not based on sufficient grounds and must be reversed.

¶17 The homeowners association counters that, under Paragraph 14 of the settlement agreement, the court could order specific performance of the agreement rather than compel the parties to submit to arbitration. The homeowners association argues that the settlement agreement indicates that all available remedies could be pursued by either party and that, in this particular instance, they were seeking specific performance, which is specifically included as a remedy under Paragraph 14 of the settlement agreement. In this case, where the parties do not dispute whether the water system was completed on time, the settlement agreement is clear, allowing the homeowners association the remedy of specific performance without having to first go through arbitration. Therefore, according to the homeowners, the District Court was correct in ordering the developers to post a performance bond or letter of credit.

¶18 In its order, the District Court stated that both parties acknowledge that, as of July 1, 1997, "the plans and specifications for the Troutbeck Rise water system have not been approved by the State of Montana and the water system has not yet been completed." The court then pointed out that under Paragraph 4 of the settlement agreement, "it is clear that a performance bond is required on July 1, 1997, if the water system was not completed." The court determined that the intent of the parties could by ascertained by the language of the settlement agreement. The court concluded by ruling that:

> The language in the instant contract (the Settlement Agreement) is clear on its face that the parties intended to require a performance bond or approved letter of credit in the sum of $335,715.00 to be posted by July 1, 1997, if the water system was not completed by July 1, 1997, and there is, accordingly, no need for the attendant delay and additional expense which would be required to submit this issue to arbitration.

¶19 Settlement agreements requiring arbitration of disputes are enforceable in Montana, as are any other contracts. See Chor v. Piper, Jaffray & Hopwood, Inc. (1993), 261 Mont. 143, 148, 862 P.2d 26, 29. Under § 27-5-114, MCA, a written agreement to submit any controversy to arbitration is valid and enforceable except on the grounds that exist at law or in equity for the revocation of a contract. Furthermore, when a party moves for arbitration under a valid agreement as described by § 27-5-114, MCA, and the opposing party refuses to arbitrate, a district court must order the parties to proceed with arbitration. Section 27-5-115, MCA.

¶20   The homeowners association contends that, in this case, it did not deny the existence of an agreement to arbitrate or refuse to arbitrate, rather, they moved the District Court for a motion to enforce the settlement agreement to either order specific performance or compel the parties to arbitrate.  The homeowners association notes that the developers did not file a motion to compel arbitration pursuant to § 27-5-115, MCA, in the proceeding before the District Court.  The homeowners association states that the District Court was correct in not ordering the parties to arbitrate because the settlement agreement was clear that under Paragraph 14, the remedy of specific performance was available, providing authority for the court to order the developers to post a bond without requiring the parties to submit to arbitration.

¶21   However, in its motion to dismiss the appeal filed with this Court, the homeowners association made the same argument that neither party made an application to compel arbitration before the District Court nor did the homeowners association refuse to arbitrate.  In an order issued October 7, 1997, this Court rejected that argument and stated that:

> [T]he effect of the district court's order was to deny the parties' application for an order compelling arbitration.  While neither party refused, per se, to arbitrate as required by § 27-1-115(1), MCA, there was, nevertheless, a dispute as to what rules would govern the arbitration, thus necessitating the intervention of the district court to decide this issue and order arbitration.

¶22   Although the District Court was aware that the parties disagreed over the interpretation of Paragraph 4, it ruled that under the language of the settlement agreement it was clear that the developers were required to post a bond on July 1, 1997, if the water system was not completed.  The court noted that under the settlement agreement the intention of the parties in requiring the bond then was clear, therefore, there was no need to submit the issue to arbitration because of its "attendant delay and additional expense."  However, these reasons are not sufficient grounds for the court to set aside the arbitration provision in Paragraph 12.

¶23   Under Paragraph 12 of the settlement agreement "any controversy or claim arising out of this agreement shall be settled by arbitration."  The homeowners association contends that there is no dispute or controversy under the settlement agreement because the parties agree that completion of the water system as defined in the settlement agreement has not been achieved by July 1, 1997.  However, the underlying issue in this case is whether, under Paragraph 4 of the settlement agreement, the developers were required to post a performance bond or letter of credit on July 1, 1997, or if they have until July 1, 1998, to post a performance bond or letter of credit.  This Court determines that this disagreement between the parties is a controversy that arises from the settlement agreement itself.  Although the settlement agreement did , indeed, contemplate the remedy of specific performance, this was not an alternative to arbitration, but a remedy available to the arbitrators when interpreting and enforcing the settlement agreement.

¶24    As stated above, an agreement to submit any controversy to arbitration is valid and enforceable except on the grounds that exist at law or in equity for the revocation of a contract. Section 27-5-114, MCA. A court may rescind a written contract under circumstances such as mistake, duress, menace, fraud, undue influence, failure of consideration, void consideration, or lack of consent of the parties.  See §§ 28-2-1714(1) and -1711, MCA.  Also, a court may set aside a contract that is unlawful or which prejudices the public interest.  See § 28-2-1714(2) and (3), MCA.  In this case, none of the parties allege that any of these grounds exist to void the arbitration clause.  Moreover, we conclude that the court's reasons for not ordering arbitration because of the clarity of the settlement agreement and the inherent delay and expense of arbitration are not valid under § 27-5-114, MCA.

¶25    Furthermore, under § 27-5-115(5), MCA, a motion to compel parties to arbitrate "may not be refused on the ground that the claim in issue lacks merit or good faith or because no fault or grounds for the claim sought to be arbitrated have been shown."  We determine that once the District Court realized that the parties had a dispute concerning the agreement, it could not ignore the arbitration provision in Paragraph 12 and proceed to decide the dispute.    Instead, the court should have ordered the parties to arbitrate the dispute as they agreed.

¶26    We conclude that in ordering the developers to post a bond, the District Court exceeded its authority under § 27-5-115(5), MCA.   By deciding that the developers violated Paragraph 4 of the settlement agreement, the court undertook to consider and decide the merits of the dispute between the parties. A district court may not decide the merits of a case when a valid agreement requires the parties to a dispute to submit to arbitration.

¶27    We hold that the arbitration clause in Paragraph 12 of the settlement agreement between the developers and the homeowners association is binding and enforceable.   We determine that the dispute between the developers and the homeowners association regarding the interpretation of Paragraph 4 is a controversy arising out of the settlement agreement that must be settled in arbitration rather than by the District Court.

¶28    Therefore, we conclude that the District Court erred in ordering the developers to post a performance bond or letter of credit rather than ordering the parties to submit to arbitration under Paragraph 12 of the settlement agreement.

ISSUE 2

¶29    In an arbitration under the settlement agreement, do the Commercial Arbitration Rules of the American Arbitration Association or the Montana Uniform Arbitration Act apply?

¶30     In reversing the District Court's order, thereby requiring the parties to submit to arbitration, this Court must now determine what rules would apply in arbitration between the parties.   The developers contend that under the plain language of the settlement agreement, the Commercial Arbitration Rules of the

American Arbitration Association should apply.  Paragraph 12 of the settlement agreement states that "any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association."

¶31  The homeowners association counters that should arbitration be necessary, it should be required pursuant to the Montana Uniform Arbitration Act.  As the homeowners association points out, the notice provision on the front page of the settlement agreement states: "THIS AGREEMENT IS SUBJECT TO ARBITRATION PURSUANT TO TITLE 27, CHAPTER 5, MONTANA CODE ANNOTATED."  Moreover, the homeowners association contends that should arbitration be required, it would be far more efficient and expeditious to proceed under the Montana Uniform Arbitration Act rather than proceeding under Commercial Arbitration Rules of the American Arbitration Association.

¶32  At the time the settlement agreement was drafted, the notice provision was required under § 27-5-114(4), MCA (1995).  This provision was required to be placed on the front page of the settlement agreement in order for the agreement to comply with Montana law.  By the inclusion of this clause on a settlement agreement or contract, the statute did not mandate that an arbitration proceed pursuant to the rules established under the Montana Uniform Arbitration Act.  Instead, its purpose was to merely notify parties that the agreement contained an arbitration clause. After the parties executed the settlement agreement, § 27-5-114(4), MCA (1995), was found to be preempted by federal law and declared invalid. See Doctor's Associates, Inc. v. Casarotto (1996), 517 U.S. 681, 116 S. Ct. 1652, 134 L. Ed. 2d. 902.  Subsequently, the statute was repealed by the Montana Legislature in 1997.

¶33  Paragraph 12 of the settlement agreement specifically provides that the parties would arbitrate any controversy or claim pursuant to the Commercial Arbitration Rules of the American Arbitration Association.  If the language of a contract is clear and explicit, then that language governs its interpretation.  See § 28-3-401, MCA.  The fact that the homeowners association now claims that an arbitration proceeding under the American Arbitration Association rules is less efficient, slower, or more expensive than an arbitration proceeding under the Montana Uniform Arbitration Act is immaterial.  In this case, under Paragraph 12 of the settlement agreement, both the homeowners association and the developers bargained for and agreed that the Commercial Arbitration Rules of the American Arbitration Association would apply.

¶34  Therefore, we conclude the parties should arbitrate their dispute pursuant to the  Commercial Arbitration Rules of the American Arbitration Association.

¶35  Reversed and remanded for further proceedings consistent with this opinion.

/S/  JIM REGNIER

We Concur:

/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  W. WILLIAM LEAPHART
/S/  WILLIAM E. HUNT, SR.