FILED

June 28 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0348

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 154

KALISPELL EDUCATION ASSOCIATION,
MEA-MFT, and WILLIAM HARTFORD,

      Petitioners and Appellees,

  v.

BOARD OF TRUSTEES, KALISPELL
HIGH SCHOOL DISTRICT NO. 5,

      Respondent/Counter Claimant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV 09-1076C
                    Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jeffrey M. Hindoien (argued); Kaleva Law Offices; Helena, Montana

      For Appellees:

            Karl J. Englund (argued); Karl J. Englund, P.C.; Missoula, Montana

                                  Argued:  April 15, 2011

                            Submitted:  April 26, 2011

                                Decided:  June 28, 2011

Filed:

_____
                             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1	The Board of Trustees (Board) for Kalispell High School District No. 5 (District), appeals the order entered by the Eleventh Judicial District Court, Flathead County, compelling arbitration of a grievance filed by William Hartford (Hartford). Hartford's grievance alleges his employment as a teacher was terminated "without just cause" in violation of a collective bargaining agreement. We affirm.

¶2	*Did the District Court err by compelling arbitration of Hartford's grievance under the collective bargaining agreement?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3	Hartford was a high school science teacher. Hartford's employment with the District began in the 1999-2000 school year and continued through the 2007-2008 school year. He was tenured. On May 29, 2008, Hartford and the Board entered into a written contract governing Hartford's employment for the 2008-2009 school year (the Teacher's Contract). At that time, Hartford was properly certified as a teacher. He held a teaching certificate valid from July 1, 2003, to June 30, 2008. Paragraph 3 of the Teacher's Contract provides: "It is understood that the Teacher either holds a valid teaching certificate under the laws of Montana or will have obtained such certificate before October 1 of the year this contract is executed, otherwise, this contract is voidable at the option of the District."

¶4	In effect for school years 2007-2009 was a collective bargaining agreement, entitled "Comprehensive Agreement" (CBA), which was entered into between Kalispell

School District No. 5 and the Kalispell Education Association (KEA), an affiliate of MEA-MFT. Article 1.1 of the CBA states the agreement is entered into "pursuant to and in compliance with the Montana Public Employees Collective Bargaining Law Title 39, Chapter 31, Revised Codes of Montana, as amended . . . to provide the conditions of employment for teachers during the duration of this Agreement with respect to wages, hours, fringe benefits, and other conditions of employment." Article 2.1 states "the District recognized the Kalispell Education Association as the Exclusive Representative of the appropriate unit." Article 2.2 states:

> Appropriate Unit: The Association shall represent members of the appropriate unit which shall consist of all teachers and long-term substitute teachers of the District who are certificated in Class I, II, IV, or V as in Section 20-4-106, specialists requiring a license under the laws of the State of Montana, and whose positions call for or require such certification . . . .

Article 5 of the CBA is entitled Teacher and Exclusive Representative Rights, and Article 5.6 provides "[n]o teacher shall be disciplined, reprimanded, reduced in rank or compensation, discharged, or deprived of any professional advantage without just cause."[1] Article 13, as required by § 39-31-306(5), MCA,[2] contains a grievance

---

[1] Section 20-4-207(1), MCA, provides "[t]he trustees of any district may dismiss a teacher before the expiration of the teacher's employment contract for good cause," and specifies the procedure to follow in doing so. Section 20-4-207(2)-(3), MCA. Under § 20-4-207(5), MCA, "[a]ny teacher who has been dismissed may in writing within 20 days appeal the dismissal . . . . The teacher may appeal a decision to terminate an employment contract to the county superintendent if the teacher's employment is not covered by a collective bargaining agreement pursuant to Title 39, chapter 31. If the employment of the teacher is covered by a collective bargaining agreement, a teacher shall appeal a decision to terminate an employment contract to an arbitrator."

[2] Section 39-31-306(5), MCA, provides in pertinent part: "An agreement to which a school is a party must contain a grievance procedure culminating in final and binding arbitration of

procedure that culminates in final and binding arbitration of unresolved grievances. A grievance must be submitted in writing to a designee of the District under Article 13.6, and if not first resolved through informal discussion, may be appealed through various levels to the Superintendent of Schools and then the Board of Trustees. CBA, Arts. 13.7.1 through 13.7.3. "In the event that the parties are unable to resolve a grievance, it may be submitted to arbitration as defined herein," under Article 13.8.1.

¶5 On June 30, 2008, Hartford's Montana teaching certificate expired by his inadvertence in failing to renew it. Because no party was aware of the expiration, Hartford began teaching in the fall of 2008 as usual. At some point prior to November 4, 2008, the county superintendent notified the District that Hartford's teaching certificate had expired. The District's superintendent notified Hartford of the expiration of his certification and informed him he was no longer eligible to receive compensation under his Teacher's Contract, pursuant to § 20-4-202, MCA. Hartford continued to teach at the District as a non-certified substitute teacher, and the Board took no further action on Hartford's Teacher's Contract. On December 11, 2008, the high school principal terminated Hartford's employment. Seven days later, Hartford obtained a new teaching certificate, with a validation date of July 1, 2008, and effective until June 30, 2011.

¶6 In January 2009 Hartford sought to file a grievance, alleging that he had been terminated "without just cause" in violation of Article 5.6 of the CBA. The District

---

unresolved and disputed interpretations of agreements. The aggrieved party may have the grievance or disputed interpretation of the agreement resolved either by final and binding arbitration or by any other available legal method and forum, but not by both."

4

superintendent, and later the Board, denied Hartford's request to grieve the issue, claiming the matter did not constitute a valid grievance under the CBA on grounds that Hartford was not a member of the bargaining unit at any point during his employment in the fall of 2008, he was not a "teacher" as defined under Montana law during his employment in the fall of 2008, and he had not validated his employment status as a "teacher" in the fall of 2008 as required by § 20-4-202, MCA. Hartford and the KEA attempted to advance the grievance process to arbitration pursuant to Article 13.8 of the CBA, but the District refused to participate.

¶7 In August 2009 Hartford and the KEA filed a petition to compel arbitration in the District Court. The District opposed the petition and filed a counterclaim for declaratory judgment, followed by a motion for summary judgment, requesting a determination that § 20-4-201, MCA, prohibits a Montana school district from entering into or maintaining an employment contract with an individual as a teacher when the individual does not possess a valid Montana teaching certificate, and that therefore the Teacher's Contract became void as a matter of law the moment Hartford ceased to possess his teaching certificate. Hartford and the KEA also sought summary judgment.

¶8 The District Court entered an order granting Hartford and the KEA's motion and denying the same for the District, reasoning "[t]he School District's arguments that once Mr. Hartford's certification expired all previously applicable contracts and rights evaporated is not supported by statute and case law. His employment contract continued without interruption as it had not been voided by the Trustees." The court reasoned the

5

Teacher's Contract and the CBA "were both subject to law which include provisions for those situations where a teacher, qualified by education and training, did not have a current registered certificate." The court stated that "[i]ronically" Hartford had obtained a new certificate seven days after dismissal that was retroactive to July 1, 2008, "thereby vitiating the District's arguments that he was excluded from the collective bargaining agreement." The District Court concluded "the dispute falls under the umbrella of the Comprehensive Agreement," and ordered the matter submitted to arbitration as provided in the CBA. The District appeals.

## STANDARD OF REVIEW

¶9 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). We review a district court's decision to grant summary judgment de novo. *Edwards v. Cascade Co. Sheriff's Dept.*, 2009 MT 451, ¶ 38, 354 Mont. 307, 223 P.3d 893. When no dispute exists as to the material facts, we review whether the court correctly applied the law. *Edwards*, ¶ 38. We review a district court's conclusions of law regarding arbitrability to determine whether they are correct. *Missoula Co. High Sch. Educ. Ass'n v. Bd. of Trustees*, 259 Mont. 438, 440, 857 P.2d 696, 697 (1993); *see also Higgins Dev. Partners, LLC v. Skanska U.S.A. Bldg., Inc.*, 2009 MT 287, ¶ 12, 352 Mont. 243, 216 P.3d 199 (citing *Ratchye v. Lucas*, 1998 MT 87, ¶ 14, 288 Mont. 345, 957 P.2d 1128).

6

## DISCUSSION

¶10 ***Did the District Court err by compelling arbitration of Hartford's grievance under the collective bargaining agreement?***

¶11     The Uniform Arbitration Act (the Act) is generally applicable to labor agreements. Section 27-5-113, MCA; *Missoula Co.*, 259 Mont. at 441, 857 P.2d at 698. Section 27-5-115, MCA, of the Act states, in pertinent part:

> **Proceedings to compel or stay arbitration.** (1) On the application of a party showing an agreement described in 27-5-114 and the opposing party's refusal to arbitrate, the district court shall order the parties to proceed with arbitration; but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of that issue raised and shall order arbitration if it finds for the applying party or deny the application if it finds for the opposing party.
>
> .   .   .
>
> (5) An order for arbitration may not be refused on the ground that the claim in issue lacks merit or good faith or because no fault or grounds for the claim sought to be arbitrated have been shown.

"It is essential to keep in mind . . . that arbitration is a matter of contract . . . ." *Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 25, 353 Mont. 201, 219 P.3d 881 (citing *Solle v. Western States Ins. Agency*, 2000 MT 96, ¶ 22, 299 Mont. 237, 999 P.2d 328). When a court is asked to compel arbitration of a dispute, "the threshold inquiry is whether the parties agreed to arbitrate that dispute." *Woodruff v. Bretz, Inc.*, 2009 MT 329, ¶ 7, 353 Mont. 6, 218 P.3d 486 (citing *Solle*, ¶ 22; *State ex rel. Bullock v. Philip Morris, Inc.*, 2009 MT 261, ¶ 15, 352 Mont. 30, 217 P.3d 475; § 27-5-115, MCA). The United States Supreme Court has stated as axiom that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration

any dispute which he has not agreed so to submit.'" *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960)).

¶12     In its opening brief, the District states its issue on appeal as whether the Teacher's Contract "is void under Montana law," and argues the "'crux' of this entire matter" is the "construction or validity" of the Teacher's Contract. "That threshold question," the District posits, "involves *only* the application of Montana law and has absolutely nothing to do with the terms of the CBA. In short, the debate here boils down to the legal effect (if any) of that 'Teacher's Contract' as of the point in time that Mr. Hartford undisputedly ceased to possess a professional teaching certificate . . . ." (Emphasis in original.) The District argues the Teacher's Contract became void as a matter of law when Hartford's certification expired, by virtue of § 20-4-201(1), MCA, which provides that school district trustees "have the authority to employ any person as a teacher or specialist, but only a person who holds a valid Montana teacher or specialist certificate . . . . Each teacher or specialist must be employed under written contract . . . ." The District argues Hartford's lapse in certification rendered his contract as one "prohibited by statute," contrary to Montana public policy, and void. The District's position essentially requires the conclusion that the Teacher's Contract, which is "voidable at the option of the District" when a teacher fails to hold certification, conflicts with statute, because at that

point the District no longer had the choice or option under the statute to continue employing Hartford.

¶13 The District seems to switch directions in the middle of briefing, at least in part. Despite its opening argument that the threshold question "has absolutely nothing to do with the terms of the CBA," but only the void contract, it argues in reply that the case turns on the undisputed fact that Hartford was not certified at the time his employment was terminated and "*the black and white language of the applicable CBA* that specifically limits its coverage to individuals who possess a valid Montana teaching certificate." (Emphasis added, original emphasis omitted.) The District's arguments well illustrate the difficulty presented in defining the precise issue to be decided under the two contracts at issue, the Teacher's Contract and the CBA, and determining whether arbitration is mandated.

¶14 Under its various arguments, the District too narrowly focuses on selected facts, and fails to consider the larger factual record. The District asserts the Teacher's Contract is "prohibited by statute" on the basis of § 20-4-201(1), MCA, and § 28-2-603, MCA, which declares void contracts with an unlawful single object, due to Hartford's temporary loss of certification. However, it is also undisputed that Hartford's Teacher's Contract had a lawful object when it was entered, thus satisfying § 28-2-602, MCA, which states "[t]he object of the contract must be lawful when the contract is made . . . ." Thus, the District indeed had "the authority to employ" Hartford, who then held "a valid Montana teacher or specialist certificate." Section 20-4-201(1), MCA. Further, it is undisputed

9

that Hartford was initially a member of the bargaining unit pursuant to Article 2.2 of the CBA.

¶15 The lapse in Hartford's certification occurred after the Teacher's Contract was entered, and notice of the lapse was given by the county superintendent during the 2008-2009 school year, around November 1, pursuant to § 20-4-202, MCA. That statute provides that a teacher who fails to register his certificate with the county superintendent "within 60 calendar days" after beginning to provide services "is not eligible to receive any further compensation under the contract of employment until the person has registered the certificate," and that "the district may not pay any teacher who has not registered the person's certificate until the county superintendent does notify the district of the registration." Section 20-4-202(1), MCA. Notably, the statute does not require termination of the teacher's employment, but rather requires cessation of further compensation under the employment contract *until* the teacher registers the certificate. Perhaps in recognition of this provision, the District changed Hartford's status to a non-certified substitute teacher, and he continued to teach. Section 20-4-202, MCA, does not further address the employment contract's status, particularly its voidability. The Teacher's Contract, by its own terms, was made "voidable at the option of the District." Hartford's employment was terminated by the high school principal on December 11, 2008, and Hartford obtained his new teaching certificate seven days later, with a validation date of July 1, 2008. He attempted to file a grievance asserting the termination of his employment was "without just cause" in January 2009.

10

¶16  The CBA does not reference the provisions of 20-4-202, MCA, regarding notice and loss of pay for teachers who fail to register their certificates, nor otherwise address the status of a teacher/unit member who temporarily loses certification during the term of the agreement, and re-obtains it.  Article 13.1 of the CBA provides that an arbitrable grievance is "a dispute or disagreement between the teacher and the District as to the interpretation or application of terms and conditions contained in this Agreement."

¶17  For purposes of the judicial determination of arbitrability, the record demonstrates significant questions regarding the status of the Teacher's Contract and the application of the CBA, and that these questions are intertwined.  The continued validity of the Teacher's Contract and Hartford's membership under the CBA after he temporarily lost certification and regained it retroactively present questions of interpretation and application of the contracts.  The District sought a declaration that Hartford's Teacher's Contract was void as a matter of law, and, upon that premise, sought a secondary determination that Hartford retained no further rights under the CBA, thus foreclosing his grievance.  But these questions, under these facts, are not that simple; and that bears upon the issue of arbitrability.

¶18  The United States Supreme Court has explained that the "presumption of arbitrability" means that "'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'" *AT&T Technologies*, 475 U.S. at 650, 106 S. Ct. at 1419

(quoting *Warrior & Gulf Navigation Co.*, 363 U.S. at 582-83, 80 S. Ct. at 1353). Recently, in *Granite Rock Company v. International Brotherhood of Teamsters*, ___ U.S. ___, 130 S. Ct. 2847, 2858 (2010), the Supreme Court explained that courts determining arbitrability of a dispute should apply the presumption if the arbitration agreement "is ambiguous about whether it covers the dispute at hand." We have likewise acknowledged that "[s]tate and federal policies generally favor arbitration when a valid arbitration agreement exists between the parties." *Higgins Dev.*, ¶ 19 (citing the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (2006), and *AT&T Technologies*, 475 U.S. at 650, 106 S. Ct. at 1419); *see also Solle*, ¶ 21. The presumption of arbitrability "is particularly applicable where the clause is as broad" as it was in *AT&T Technologies*, which provided for arbitration "'of any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . . .'" *AT&T Technologies*, 475 U.S. at 650, 106 S. Ct. at 1419.

¶19    Similarly, we have recognized, in the context of exhaustion of remedies, that the policy of the state of Montana favors resolving labor disputes under the terms of a collective bargaining agreement. *Klein v. State ex rel. Mont. Dept. of Corrections*, 2008 MT 189, ¶ 11, 343 Mont. 520, 185 P.3d 986 (citing *Small v. McRae*, 200 Mont. 497, 503-04, 651 P.2d 982, 986 (1982)). "'Only . . . where it is certain that the arbitration clause contained in a collective bargaining agreement is not susceptible to an interpretation that covers the dispute is an employee entitled to sidestep the provisions of

the collective bargaining agreement.'" *Klein*, ¶ 11 (quoting *Small*, 200 Mont. at 504, 651 P.2d at 986).

¶20    Further, in deciding whether the parties have agreed to submit a particular grievance to arbitration, "a court is not to rule on the potential merits of the underlying claims." *AT&T Technologies*, 475 U.S. at 649, 106 S. Ct. at 1419. As previously noted, § 27-5-115(5), MCA, prohibits a court from refusing an order for arbitration "on the ground that the claim in issue lacks merit or good faith or because no fault or grounds for the claim sought to be arbitrated have been shown." *See e.g. Ratchye*, ¶ 25.

¶21    As noted above, significant questions have been raised in this record about the status of the Teacher's Contract and the application of the CBA to Hartford, a teacher/unit member who temporarily lost certification. Under the presumption, arbitration of a grievance "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and doubts are "resolved in favor of coverage." *AT&T Technologies*, 475 U.S. at 650, 106 S. Ct. at 1419 (internal quotation marks omitted). An arbitrable grievance under Article 13.1 of the CBA consists of "a dispute . . . as to the interpretation or application of terms and conditions contained in this Agreement." We cannot say with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." We therefore conclude Hartford's grievance is subject to arbitration under the CBA.

13

¶22 We conclude the questions raised by this matter are properly submitted to arbitration, and we decline to address the merits of those issues. We hereby modify any conclusions entered by the District Court which are inconsistent with this opinion.

¶23 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS