
DA 06-0256

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 189

REBEKAH KLEIN,

        Plaintiff and Appellant,

  v.

THE STATE OF MONTANA, by and through its
MONTANA DEPARTMENT OF CORRECTIONS,

        Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. BDV-2005-010
                    Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Tom W. Stonecipher (argued), Bridget White leFeber, Tarlow Stonecipher
                & Steele, PLLC, Bozeman, Montana

        For Appellee:

                Michael Richard King (argued), Special Assistant Attorney General,
                Helena, Montana

        For Amicus MEA-MFT, Montana Trial Lawyers Association, Montana
        AFL-CIO, Teamsters Union, Local 190, AFSME Montana State Council No. 9,
        Montana Nurses Association, Montana Public Employees Association,
        International Union of Operating Engineers, Local 400, International Brotherhood
        of Electrical Workers, Local 233:

                Karl J. Englund, Karl J. Englund, P.C., Missoula Montana

                Stephen C. Bullock, Bullock Law Firm, Helena, Montana

        For Amicus Montana Defense Trial Lawyers Association:

                Jeff M. Hindoien, Gough, Shanahan, Johnson & Waterman,
                Helena, Montana

For Amicus Montana League of Cities and Towns and Montana Association of Counties:

    Oliver H. Goe, Chad E. Adams, Browning, Kaleczyc, Berry & Hoven, P.C., Helena, Montana

Argued:     April 4, 2007
Submitted:  April 17, 2007
Decided:   May 29, 2008

Filed:

_____
                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant Rebekah Klein (Klein) appeals a grant of summary judgment in favor of the state of Montana, by and through its Montana Department of Corrections (DOC) in the First Judicial District Court, Lewis and Clark County. We affirm in part, reverse in part and remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Klein is a member of the Montana Federation of Probation and Parole, Local No. 4464 (Union), and a probation and parole officer with the DOC in Bozeman, Montana. Klein signed a collective bargaining agreement (CBA) with the DOC prior to her employment. In its preamble, the CBA describes itself as "a basic and complete agreement between the parties concerning terms and conditions of employment which are not otherwise mandated by statute." As such the CBA covers a wide range of issues pertaining to employment with the DOC, including a grievance procedure involving the use of arbitration for resolving disputes between the DOC and Union members.

¶3 On April 14, 2003, Klein was suspended with pay from her position due to allegations she had revealed confidential information about an on-going investigation of a Bozeman police officer to the police officer who was himself the target of the investigation. On April 17, 2003, Klein and a Union representative met with a human resource officer and criminal investigator from the DOC to discuss the matter. Klein alleges that DOC officials misrepresented to her the nature of this meeting, stating it was merely to discuss a "personnel matter" and that information divulged in the meeting would not be used in a criminal investigation against her. However, Klein alleges that

3

DOC officials turned over information gleaned from the meeting to the Gallatin County Attorney, who then unsuccessfully attempted to prosecute Klein for official misconduct. According to Klein, during this meeting DOC officials never provided Klein with any warnings, or indicated they intended to use this information to bring a criminal prosecution against her.

¶4 On May 7, 2003, after conducting an investigation into Klein's alleged misconduct, officials from the DOC held a hearing on the matter. Prior to this hearing, DOC officials informed the Bozeman Daily Chronicle that an investigation had been conducted concerning an adult probation officer on leave with the DOC, and that the results of that investigation would be turned over to the Gallatin County Attorney. The Chronicle in turn reported this information. According to Klein, she and her Union representatives requested a copy of the investigative report prior to the hearing, but their requests were initially denied. They were later given copies of this report at the May 7 hearing.

¶5 On May 27, 2003, the DOC informed Klein by letter that her employment with the DOC was terminated. Among the stated reasons for the discharge was the existence of substantial evidence, based on the hearing and related investigation, that Klein had obstructed and interfered with the investigation of the Bozeman police officer. On June 3, 2003, Klein filed a grievance with the DOC, stating that she was fired without just cause and seeking to be made whole by receiving her former position, back pay and benefits. Her grievance was arbitrated, with a decision in her favor handed down on May 12, 2005. The arbitrator found that Klein was not fired for just cause and directed DOC

4

to reinstate her and take appropriate measures to make her whole for the losses she had occasioned.

¶6     Prior to the entry of the arbitrator's final decision, Klein filed suit against the DOC on January 6, 2005, in Lewis and Clark County District Court. Her Complaint against DOC contained four separate counts. Count I claimed a violation of due process, while Counts II through IV sounded in tort. The State moved for summary judgment on all four counts. The District Court held oral argument on January 26, 2006, ultimately granting the State's motion and dismissing Klein's suit. The District Court concluded that the terms of the CBA and the authority set forth in *Small v. McRae*, 200 Mont. 497, 651 P.2d 982 (1982), *McKay v. State of Mont. Bd. of Regents*, 2003 MT 274, 317 Mont. 467, 79 P.3d 236, and *Buckhorn v. St. Jude Heritage Medical Group*, 18 Cal. Rptr. 3d 215 (Cal. App. 4 Dist. 2004), required that Klein exhaust her remedies through arbitration, and prohibited her from litigating her dispute with the DOC because she had failed to exhaust those remedies. As stated in the District Court's order:

> The language of the collective bargaining agreement states that it is the intent of the agreement to set forth [a] "complete agreement between the parties concerning terms and conditions of employment which are not otherwise mandated by statute." Further, the parties agree that they will arbitrate "all disputes arising between them involving questions of interpretation or application of the provisions of this agreement." In the view of this Court, the combination of the just quoted provisions of the collective bargaining agreement dictate that these particular causes of action currently filed by Klein against the State must be arbitrated. The collective bargaining agreement indicates that it is setting forth a complete agreement between the parties concerning the terms and conditions of employment.
>         . . . .
>         In light of the discretion this Court has been given to resolve any doubt in favor of arbitration, this Court must hold that the State's motion

5

should be granted. Klein has failed to exhaust her collective bargaining grievance procedures. As such, she cannot be allowed to sidestep those procedures and bring this action.

¶7 Klein appeals this grant of summary judgment. She asserts the District Court erred in concluding that the terms of the CBA applied to her claims and required her to grieve the claims and exhaust her remedies under the CBA. Klein maintains the terms of the CBA are unambiguous and allow her to litigate her claims in District Court. She asks this Court to reverse the grant of summary judgment and reinstate those claims. The State opposes Klein and urges us to affirm the District Court. The State contends all the facts furnishing a basis for her Complaint arose from the DOC's investigation and resulting discharge, and were adequately covered by the grievance process provided for in the CBA. The State argues Klein pursued her grievance through the appropriate process, obtained reinstatement with back pay and benefits, and "cannot now completely sidestep the process which produced those results and sue in district court for more money." Klein's appeal before this Court is timely.

## ISSUES

¶8 We state the sole issue on appeal as follows: *Did the District Court err in concluding the CBA prevented Klein from litigating her claims in District Court?*

## STANDARD OF REVIEW

¶9 We review grants of summary judgment de novo using the same criteria as the district court under M. R. Civ. P. 56. *Hogenson Const. of N.D. v. Mont. State Fund*, 2007 MT 267, ¶ 11, 339 Mont. 389, ¶ 11, 170 P.3d 471, ¶ 11. In reviewing the district court's

6

decision, "[w]e must determine whether the district court correctly applied the law." *Hogenson*, ¶ 11.

## DISCUSSION

¶10 Our main task in resolving the current appeal is to determine whether the District Court correctly concluded that the CBA covered all four counts in Klein's Complaint, thus requiring her to exhaust her remedies through mechanisms provided in the CBA. Resolving this question involves a consideration of both the terms of the CBA, and the specific allegations in Klein's Complaint.

¶11 Generally speaking, grievance procedures provided for in a collective bargaining agreement must be exhausted in the course of resolving disputes between employers and employees. *Mackay*, ¶ 24. There is a well-established policy in favor of resolving labor disputes under the terms of a collective bargaining agreement when such an agreement is present. *Small*, 200 Mont. at 503-04, 651 P.2d at 986; *Mackay*, ¶ 25. However, there is a narrow exception to this general principle. "Only in those cases where it is certain that the arbitration clause contained in a collective bargaining agreement is not susceptible to an interpretation that covers the dispute is an employee entitled to sidestep the provisions of the collective bargaining agreement." *Small*, 200 Mont. at 504, 651 P.2d at 986. Moreover, collective bargaining agreements do not always preclude employees covered under their terms from pursuing independent causes of action. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571, 96 S. Ct. 1048, 1059-60 (1976) (finding employee may pursue an independent cause of action in spite of finality of arbitration decision when employee alleged union representation was dishonest, in bad faith, or

7

discriminatory); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 81-82, 119 S. Ct. 391, 397 (1998) (holding that a collective bargaining agreement did not prevent employee from bringing suit against employer under the Americans with Disabilities Act of 1990); *Miller v. Co. of Glacier, Montana*, 257 Mont. 422, 427-28, 851 P.2d 401, 404 (1993) (holding that whether a collective bargaining agreement precludes employee from bringing a claim under 42 U.S.C. § 1983 dependent upon the provisions of the agreement itself).

¶12    We first turn to the allegations set forth in Klein's District Court Complaint. Count I alleges DOC officials violated Klein's due process rights under Article II, Section 17 of the Montana Constitution and Fourteenth Amendment to the United States Constitution by compelling her to testify against herself during the investigations prior to her discharge, and thus destroying her ability to continue to pursue a career in law enforcement.   Count II complains that DOC officials committed the tort of deceit by willfully misrepresenting the purpose of their meeting with her on April 17, 2003.  Klein alleges the DOC misrepresented the meeting as a personnel matter "with the intent to induce Ms. Klein to make statements which would be turned over to the Gallatin County Attorney's office for purposes of instituting criminal charges against Ms. Klein."  Count III alleges the DOC negligently investigated this incident, and breached its duty to Klein to reasonably conduct its investigation of her by failing to interview key witnesses prior to discharging her.   Finally, Count IV alleges that, as a result the DOC's actions throughout this affair, she has "suffered and continues to suffer, severe emotional

8

distress" and that this distress was a "reasonably foreseeable consequence of the [DOC's] negligent acts and omissions."

¶13     Next we turn to the CBA itself.  It contains a Preamble and twenty-seven articles, of which only the Preamble, Article 17, titled "Grievances and Arbitration," and Article 18, titled "Employee Rights," are relevant to the current appeal.  The Preamble, as cited to by the District Court, describes the CBA as a "basic and complete agreement between the parties concerning terms and conditions of employment which are not otherwise mandated by statute."  Article 17 describes arbitration and grievance procedures.  Article 17, Section 1 of the CBA states as follows:

> Having a desire to create and maintain harmonious labor relations, the parties hereto agree that they will promptly attempt to adjust all disputes arising between them involving questions of interpretation or application of the terms and provisions of this Agreement.

¶14     Article 17, Section 3D states as follows:

> When the grievance is presented in writing there shall be set forth all of the following:
> 1. A complete statement of the grievance and facts upon which it is based.
> 2. The rights of the individual claimed to have been violated and the remedy or correction requested.

Article 17, Section 3E, titled "Rules of Grievance Processing," then states the following: "Employees desiring to contest an employment action through alternative statutory or civil procedures may not contest the same employment action under the provisions of this Agreement's grievance procedure."

9

¶15    The rights referred to in (2) of Article 17, Section 3D are found in Article 18, titled "Employee Rights."  Klein's grievance alleged that that the DOC violated Section 1 and Section 11 in her termination.  Those portions read as follows:

> Section 1.    No permanent employee shall be disciplined or discharged except for just cause.
> . . . .
> Section 11.    An employee charged by a client with improper behavior or with violating an agency rule or policy shall be deemed innocent until such time as sufficient evidence to the contrary has been presented.  Any disciplinary action based on a client complaint may be applied through the grievance procedure.

¶16    The State contends that the terms of the CBA cover the counts in Klein's Complaint, and that she was required to resolve all her claims through the grievance process as provided under the CBA.  The State claims that Klein "either raised or should have raised all of her employment claims during the grievance process she chose to pursue."  In support of its argument, the State makes five major points.  First, it points out that under *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S. Ct. 614 (1965), the CBA provides Klein with an exclusive remedy for her employment claims unless and to the extent it provides otherwise.  Second, the State argues the language in the Preamble shows that the only employment matters not covered by its terms are statutory mandates.  In this case, because no statutory mandates are operative, the CBA controls.  Third, the State asserts that because Article 17, Section 1 covers "all disputes . . . involving questions of interpretation or application of the terms and provisions of this Agreement" this phrase should be broadly interpreted under *United Steel Workers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 80 S. Ct. 1343 (1960), to include the disputes contained in Klein's

Complaint. The State, urging us to adopt the reasoning used by the District Court, argues that the CBA does not need to set forth every possible cause of action in order for such actions to be subject to arbitration. This, along with the well-established presumption in favor of exhausting remedies provided under collective bargaining agreements, including arbitration, as announced in *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347 (1960), demonstrates that the counts alleged by Klein in District Court were covered by the CBA. As further support, the State cites to *Buckhorn*, *Vianna v. Doctors's Management Co.*, 33 Cal. Rptr. 2d 188 (Cal. App. 1 Dist. 1994), and *Writers Guild of Am., West, Inc. v. Merrick*, 181 Cal. Rptr. 530 (Cal. App. Dist. 2 1982), among others, which, the State claims, are cases where employment agreements nearly identical to the CBA here were construed to bar torts similar to the ones Klein advances.

¶17 Fourth, the State argues Klein could have sought other damages in her grievance but because she failed to do so, she waived her right to pursue those claims further. The CBA "does not exclude any remedy of relief . . . from its grievance process, nor does it provide that relief available for a discharge without just cause is limited to back pay/benefits and reinstatement." According to the State, in pursuing the grievance process ultimately leading to her reinstatement and receipt of back pay, Klein "invoked her full panoply of rights under her CBA's grievance process and then pursued that process to a final and binding conclusion." Fifth, the State argues that the term "just cause" as used in the CBA should be broadly construed to cover those considerations of due process upon which Klein bases her Complaint. The State argues that the issue of

11

whether Klein was fired for just cause "includes considerations of procedural due process even if there is no explicit due process provision in the contract." *In re Pan American Corp*, 140 B.R. 336, 340 (S.D.N.Y. 1992). As a result, any alleged due process violations were remedied in the grievance procedure when the arbitrator found Klein was not fired for just cause, and decreed an award in her favor.

¶18 Klein argues the CBA does not cover the counts alleged in her Complaint, and that the District Court erred in granting summary judgment to the State. Klein maintains nothing in the Preamble, or the CBA itself, covers the types of state law claims she raised in District Court. She argues that Article 17 of the CBA, where it states that the parties agree to adjust "all disputes arising between them involving questions of interpretation or application of the provisions of this Agreement," is simply limited to disputes concerning the interpretation and application of actual provisions of the CBA, and does not cover the causes of action against the DOC as alleged in her Complaint. Klein argues that because the CBA contains no specific provisions which can be said to apply to claims of violation of due process or the other torts she has alleged, her claims fall outside the terms of the CBA and can be pursued in District Court. Klein claims her position is supported by *Small*, and *Missoula Co. High Sch. Educ. Assn. v. Bd. of Trustees*, 259 Mont. 438, 857 P.2d 696 (1993).

¶19 Klein further maintains the District Court erred in its interpretation of the CBA, and that policy statements in favor of arbitration or exhaustion of remedies under the CBA should not be construed to undermine the plain language of the CBA itself. Klein, citing to *Ratchye v. Lucas*, 1998 MT 87, 288 Mont. 345, 957 P.2d 1128, asserts that an

arbitration provision in a collective bargaining agreement applies only to matters which the parties have agreed to arbitrate, and does not extend further. Additionally, Klein asserts Article 17, Section 3E of the CBA demonstrates that she had available to her the alternative to pursue her tort and due process claims through either the grievance procedure, or in court. In this case, Klein argues that she "only grieved and arbitrated the issue of whether she had been disciplined and discharged by the [DOC] for 'just cause' . . . ." Her due process and tort claims, she argues, were not pursued under the grievance procedures of the CBA; thus, she may elect to pursue them in District Court.

¶20 We interpret the provisions of a collective bargaining agreement "according to the plain, ordinary language used by the parties." *Winchester v. Mountain Line*, 1999 MT 134, ¶ 28, 294 Mont. 517, ¶ 28, 982 P.2d 1024, ¶ 28 (quotation omitted). When reviewing whether a claim is covered by the terms of a collective bargaining agreement, the role of the court "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steel Workers of Am*, 363 U.S. at 568, 80 S. Ct. at 1346. If it is, then the aggrieved party must pursue and exhaust those remedies provided for in the collective bargaining agreement. *Lueck v. United Parcel Serv.*, 258 Mont. 2, 8, 851 P.2d 1041, 1044-45 (1993).

¶21 In *Winchester,* for instance, we held that an employee could file suit against his employer for alleged unfair labor practices. *Winchester*, ¶ 28. In that case, our primary focus was on whether the terms of the collective bargaining agreement between the plaintiff Winchester and his employer, Mountain Line of Missoula, allowed him to bring a suit for unfair labor practices in state court, or required him to submit his grievance to

13

arbitration. We held that arbitration of the claim was not required because a specific provision in that agreement stated that claims such as those Winchester filed in district court, were not subject to the grievance procedures of the agreement. *Winchester*, ¶¶ 25-28.

¶22 In general, we agree with the interpretation of the CBA advanced by Klein in this case. In the first instance, nothing in the CBA requires that the issue of whether a grievance is arbitrable be first submitted to an arbitrator. The case at bar is distinguishable from cases like *Writer's Guild* in which such clauses are inserted into collective bargaining agreements by the parties. In *Writer's Guild*, for instance, such a clause reads as follows:

> C. MATTERS SUBJECT TO ARBITRATION BUT NOT GRIEVANCE [¶]. Notwithstanding anything elsewhere contained in this Article 10, *the following matters shall be submitted to arbitration but not to grievance: [¶] 1. Any dispute as to whether the arbitrator has jurisdiction or whether any matter is arbitrable,* provided however, that the arbitrator may not order an arbitration of any matter not arbitrable as provided above . . . .

*Writer's Guild*, 181 Cal. Rptr. at 533 (emphasis added).

¶23 There is no comparable clause in the CBA before the Court now. Accordingly, the dispositive question is simply whether the counts in Klein's Complaint concern the "interpretation or application of the terms and provisions of" the CBA. If they do, then Klein should have submitted them to arbitration. If they do not, then Klein is not compelled to pursue those causes under the terms of the CBA.

¶24 We agree with Klein that she was not required to pursue her claims for the tort of deceit (Count II), or the tort of negligent infliction of emotional distress (Count IV)

14

through arbitration per the CBA. Before the arbitrator, Klein challenged whether or not she was fired for just cause. We cannot say this claim encompasses the tort of willful deceit arising out of DOC's alleged misrepresentations made in connection with facilitating criminal proceedings against Klein, or the negligent infliction of emotional distress in connection with DOC's conduct as alleged in Klein's Complaint; nor has the State shown that it does. More importantly, however, we cannot say that the scope of the arbitration clause can be construed to cover these claims, thus requiring them to be submitted to arbitration. While expressing no view on the merit of these two claims, we reverse the District Court's grant of summary judgment as to Counts II and IV and hold that they must be reinstated before the District Court. However, we caution that Klein's claims for negligent infliction of emotional distress may only be premised upon DOC's alleged conduct in misrepresenting the nature of the April 17, 2003 interview and turning information gleaned from this interview to the Gallatin County Attorney for prosecution.

¶25    Our conclusion in this regard is supported by *Croom v. City of DeKalb*, 389 N.E.2d 647 (Ill. App. 2 Dist 1979). In *Croom*, there was a dispute as to whether firefighters who were assigned duties as acting officers were entitled to additional pay. The firefighters sought to compel arbitration on the issue, but their employer, the City of Dekalb, resisted these efforts. The provision of the agreement at issue in that case read as follows: "In the event that the Union Committee and the aggrieved are dissatisfied with the City Manager's decision and said grievance involves the *interpretation or application of the express provisions of this Agreement*, the Union may refer the matter to Arbitration . . . ." *Croom*, 389 N.E.2d at 648 (emphasis added). The Illinois court sided with the

15

city finding that arbitration was not required because there were no express provisions in the agreement which covered the issue of additional pay for firefighters who performed the duties of acting officers. *Croom*, 389 N.E.2d at 652. The Appellate Court of Illinois, reviewing this result in *Jupiter Mechanical Indust. Inc. v. Sprinkler Fitters and Apprentices Local Union No. 281*, 666 N.E.2d 781 (Ill. App. 1 Dist. 1996), characterized it as follows:

> There was no express provision in the Agreement covering additional pay for firefighters assigned to duties as acting officers. For that reason the court held the arbitration clause did not cover the dispute. In *Croom*, the contract established a broad grievance procedure and a narrow scope of arbitration.

*Jupiter*, 666 N.E.2d at 784.

¶26 Here, as in *Croom*, the scope of arbitration is limited to "questions of interpretation or application of the terms and provisions of" the CBA. None of the terms or provisions of the CBA even remotely touch upon the torts of deceit and resulting negligent infliction emotional distress as alleged in Klein's Complaint. Indeed, the alleged actions of the DOC are far afield of any employment action and have nothing to do with the any of the rights, terms, or provisions enumerated in the CBA.

¶27 The Dissent suggests that our Opinion gives "mere lip service to the basic concept that Klein is required to exhaust all of her remedies by use of the grievance procedure." (Dissent, ¶ 46). To the contrary, our Opinion affirms the notion that collective bargaining agreements should be interpreted according their terms, and not in a manner beyond what the parties have actually agreed to and bargained for. As stated recently by the California Court of Appeals,

16

As the secondary authorities which analyze many of the cases [which discuss the scope of arbitration clauses] strongly suggest, the decision as to whether a contractual arbitration clause covers a particular dispute rests substantially on whether the clause in question is "broad" or "narrow." (See Knight et al., Cal. Practice Guide, Alternative Dispute Resolution (The Rutter Group 2005) ¶ 5:215.3; see generally *id.* at ¶¶ 5:8 & 5.215—5:225.) A "broad" clause includes those using language such as "*any claim* arising from or *related to* this agreement" (*id.* at ¶ 5:222) while "[m]ore narrowly worded clauses" are considered "dangerous to utilize" (*id.* at ¶ 5:223)—presumably meaning "dangerous" to the party wanting to arbitrate disputes under it.

*Bono v. David*, 54 Cal. Rptr. 3d 837, 845 (Cal. App. 1 Dist. 2007) (alterations in original).

¶28    There are many examples in the jurisprudence in this area which illustrate the distinction between these "broad" and "narrow" clauses. For instance, in *Wolitarsky v. Blue Cross of Ca.*, 61 Cal. Rptr. 2d 629 (Cal. App. 2 Dist. 1997), a claim that a health insurance policy violated state and federal laws against gender discrimination was required to go to arbitration based on the following clause:

Any dispute between the Member and Blue Cross regarding the decision of Blue Cross must be submitted to binding arbitration if the amount in dispute exceeds the jurisdictional limits of the small claims court.

*Wolitarsky*, 61 Cal. Rptr. 2d at 630.

¶29    Similarly, in *Coast Plaza Doctors Hosp. v. Blue Cross of Ca.*, 99 Cal. Rptr. 2d 809 (Cal. App. 2 Dist. 2000), a clause which required the arbitration of "[a]ny problem or dispute arising under this Agreement and/or concerning the terms of this Agreement" required various tort claims asserted by a plaintiff to be submitted to arbitration. *Coast Plaza*, 99 Cal. Rptr. 2d at 812.

17

¶30     In *Medical Staff of Doctors Medical Center in Modesto v. Kamil*, 33 Cal. Rptr. 3d

853 (Cal. App. 2 Dist. 2005), however, the court concluded that an arbitration clause was

not broad enough to cover a dispute involving claims of defamation.  In that case, several

groups of physicians practicing at Modesto Hospital sued Blue Cross for defamation after

it issued press releases stating that "59 percent of the heart procedures performed by [the

plaintiffs] were medically unnecessary." *Kamil*, 33 Cal. Rptr. 3d at 855.  Because the

holding of *Kamil* aptly sums up the approach we adopt in this case, we quote it at length:

> The agreement between Blue Cross and Physicians contains a general arbitration clause that provides in part:  "BLUE CROSS and PHYSICIAN agree to meet and confer in good faith to resolve any problems or disputes that may arise under this Agreement.  In the event that any problem or dispute concerning the terms of this Agreement, other than a Utilization Review decision as provided for in Article VII, is not satisfactorily resolved, BLUE CROSS and PHYSICIAN agree to arbitrate such problem or dispute."
> The first sentence of the clause requires the parties to confer in good faith to resolve disputes that arise under the agreement.  The next sentence apparently limits arbitration to those disputes *concerning the terms of the agreement*.
> . . . .
> Blue Cross argues the cases establish that a broadly worded arbitration clause applies to any controversy that has its " 'roots' " in the contractual relationship.  It relies on the general arbitration clause that requires arbitration of disputes concerning the terms of the agreement.  Even assuming this clause can reasonably be read to encompass disputes having "roots" in the contract relationship, or arising out of that relationship, Blue Cross does not prevail.
> . . . .
> Here the contract between Blue Cross and Physicians is to provide medical care for Blue Cross beneficiaries.  The question is whether the seemingly innocuous phrase "concerning the terms of" the agreement to provide medical care can reasonably be said to include the alleged malicious destruction of the Physicians' personal and professional reputations.  To ask the question is to answer it.  The answer is no.  There may be cases where the alleged defamation is so intimately bound with the terms of the agreement that arbitration is appropriate.  But the terms of this

> agreement do not give Blue Cross carte blanche to publicly pillory Physicians in press releases and newspaper reports as alleged here. The defamation complained of here no more concerns the terms of the agreement, than would a punch in the nose during a dispute over a medical billing.

*Kamil*, 33 Cal. Rptr. 3d at 856-57 (citations omitted).

¶31    In like manner, Klein's tort of deceit claim "no more concerns the terms of the agreement, than would a punch in the nose" during a hearing or any other proceeding initiated by the DOC. As stated in *Kamil*, there may be cases where an alleged tort is "so intimately bound with the terms of the agreement that arbitration is appropriate," but this is not one of those cases. As in *Kamil*, the terms of the CBA do not give the DOC "carte blanche" to treat Klein in any manner it sees fit, and then require her to submit any and all grievances to arbitration simply because she is an employee—especially, when as here, DOC's actions are not "rooted" in the contractual relationship established between the parties in the CBA. *See Buckhorn*, 18 Cal. Rptr. 3d at 219 (noting that the question of whether tort claims can be independently pursued in spite of an arbitration clause "turns on whether the tort claims are 'rooted' in the contractual relationship between the parties . . . .").

¶32    As we stated in *Miller*, "a collective bargaining agreement may contain an agreement with the employees that the employee will submit to arbitration 'any controversies' arising from the collective bargaining agreement. When such an arbitration provision is included in a contract, it may encompass determination of tort claims within the arbitration itself." *Miller*, 257 Mont. at 426, 851 P.2d at 403 (citing *Vukasin v. D.A. Davidson & Co.*, 241 Mont. 126, 785 P.2d 713 (1990)). If the Union and

DOC had wanted to include a clause requiring arbitration of any and all disputes, or any and all tort claims, they could have done so. However, they did not. Thus, we should limit ourselves to the terms the parties have actually bargained for, irrespective of whether we practice law in Philadelphia or Frenchtown.

¶33    In this connection, we distinguish the State's reliance on *AT&T Technologies, Inc. v. Commun. Workers of Am.*, 475 U.S. 643, 106 S. Ct. 1415 (1986), as well as *D'Agnostino v. Housing Auth. of the City of Waterbury*, 898 A.2d 228 (Conn. App. 2006), because both of those cases involved whether a lay-off of employees was proper under the terms of those collective bargaining agreements. *AT&T*, 475 U.S. at 645-48, 106 S. Ct. at 1416-18; *D'Agnostino*, 898 A.2d at 231. *Mallett v. Town of Plainville*, 2006 U.S. Dist. LEXIS 15794 (D. Conn. 2006), is also distinguishable because the plaintiff's claims in that case were dismissed because he failed to state claims for which relief could be granted. *Mallett*, 2006 U.S. Dist. LEXIS at *41-45. While the district court there did state that the claims were precluded under the terms of the collective bargaining agreement, the language of that agreement was markedly different from the CBA here,[1] and the district court's statements on this point were dicta which we decline to follow. *Mallett*, 2006 U.S. Dist. LEXIS at *45.

¶34    However, we affirm the District Court's grant of summary judgment with respect to Count I, which asserts a deprivation of due process, and Count III, the tort of negligent

---

[1] The pertinent language from *Mallett*, in which the district court cites to the collective bargaining agreement at issue there, reads as follows: "[Section] 13 of the CBA, which provides that 'disputes and consultations on any questions arising out of the Employer-Employee relationship' must be handled in the first instance by filing a grievance with the union . . . ." *Mallett*, 2006 U.S. Dist. LEXIS at *45.

investigation. In Count I, Klein alleged that she was deprived of her career in law enforcement as a result of the conduct of DOC, and that she was compelled to relocate out of state so as to rebuild her career. As previously noted, Klein's Complaint was filed before she won her grievance and was reinstated to her position with instructions that DOC make her whole for the losses she had sustained. Therefore, we conclude that any deprivation of due process and the resulting damage occasioned by the loss of her employment was arbitrated and compensated for in the grievance process.

¶35 With respect to Count III, we likewise agree with the State that Klein already grieved her claim for negligent investigation before the arbitrator when she challenged whether she was fired for "just cause". Indeed, the arbitrator's finding that she was not fired for just cause was based upon the faulty investigation of Klein leading up to her discharge. As a result, the District Court properly dismissed this count.

¶36 The Dissent argues that our decision as to Counts II and IV is flawed due to our incorrect interpretation of the CBA. The Dissent asserts that the CBA requires Klein to submit the question of whether an employment action is arbitrable to arbitration. However, the CBA contains no such requirement. Article 17, Section 1 of the CBA states that "the parties hereto agree that they will promptly attempt to adjust all disputes arising between them involving questions of interpretation or application of the terms and provisions of this Agreement." The Dissent interprets this provision to mean that Klein "was required to submit all of her claims that are arguably within the purview of the CBA to the arbitrator, and it is the arbitrator, not a reviewing court, that makes the decision whether any of such claims are arbitrable under the agreement." (Dissent, ¶ 49).

21

However, while the parties certainly *could have* included language in the CBA which required the question of arbitrability to be submitted first to arbitration, they did not. (*See* ¶¶ 22-23).

¶37 Another issue raised by the Dissent concerns whether or not all of Klein's claims arise from her employer's treatment of her as an employee, thus constituting a single "employment action." Article 17, Section 3E of the CBA gives employees the option of either contesting an employment action through the CBA's grievance procedures, or through utilizing "alternative statutory or civil procedures." In other words, a single employment action cannot be contested both through the grievance procedures of the CBA, and through court action. The Dissent contends there can be "no doubt" that all the matters addressed in Klein's complaint constitute an "employment action."

¶38 Although the term "employment action" is nowhere defined in the CBA, the scope of the arbitration clause is narrowly drawn and does not encompass all of Klein's tort claims. The facts giving rise to the tort of deceit and negligent infliction of emotional distress as alleged by Klein in her Complaint, are not in any way related to the "employment action" which she grieved. DOC's alleged handing over of information gleaned from its interview with her to the Gallatin County Attorney for prosecution does not in any sense constitute an "employment action." These alleged actions of the DOC do not concern the terms and provisions of the CBA or Klein's rights as described in Section 18.

¶39 Finally, we address the State's argument that Klein's claims here are barred under the Wrongful Discharge From Employment Act (WDEA), § 39-2-901 through -915,

MCA. Because the District Court dismissed all the counts in Klein's Complaint for failing to exhaust her remedies under the CBA (*see* ¶ 6), it did not address this claim. However, based on the foregoing analysis we find that the WDEA does not bar Counts II and IV of Klein's Complaint because these counts are wholly independent from any rights or remedies related to her discharge which were previously addressed when Klein grieved that she had not been fired for just cause. *See Beasley v. Semitool, Inc.*, 258 Mont. 258, 262, 853 P.2d 84, 86 (1993) (noting that the WDEA "does not bar all tort or contract claims merely because they arise in the employment context.").

## CONCLUSION

¶40 We affirm the District Court's grant of summary judgment with respect to Counts I and III of Klein's Complaint, and its dismissal of these claims. We reverse the District Court's grant of summary judgment with respect to Counts II and IV of Klein's Complaint, and remand for further proceedings thereon.


/S/ PATRICIA COTTER

We concur:
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART


Chief Justice Karla M. Gray, specially concurring.

¶41 I join in the results reached by the Court and in much of its analysis. I write separately to set forth a more direct approach to whether Klein was required to exhaust

23

the CBA grievance procedures to and through arbitration with regard to her claims of deceit and negligent infliction of emotional distress.

¶42 Article 17, Section 2, of the parties' negotiated CBA contains a grievance procedure which may culminate in final and binding arbitration. Section 39-31-306(2), MCA, expressly permits such a provision. CBA Article 17, Section 3, captioned Rules of Grievance Processing, contains six subsections, most of which relate directly to the procedure set forth in Section 2.

¶43 Subsection E of Section 3, however, is decidedly different. It provides that "[e]mployees desiring to contest an employment action through alternative statutory or civil procedures may not contest the same employment action under the provisions of this Agreement's grievance procedure." The inclusion of this portion of Article 17 makes it clear that the Section 2 grievance procedure is not exclusive. Indeed, Section 3E clearly provides that an employee can contest one employment action through the Section 2 grievance procedure and another, different employment action, via civil litigation.

¶44 Here, Klein's collective bargaining unit successfully pursued her discharge and resulting damages through binding arbitration. It is my view that the DOC's alleged willful misrepresentations to Klein about the nature of its dealings with her, which resulted in a criminal prosecution, are an employment action separate and apart from the later termination of her employment. In my view, this employment action was not part of the grievance ultimately processed to—and through—binding arbitration and, therefore, Article 17, Section 3E, expressly authorized Klein to raise this employment action in a

24

civil lawsuit. To hold otherwise would be to ignore a CBA provision the parties negotiated in good faith.

¶45 For these reasons, I join the Court in reversing the District Court on the deceit and emotional distress claims asserted by Klein.


/S/ KARLA M. GRAY


Justice John Warner dissents.

¶46 I dissent. The Court gives mere lip service to the basic concept that Klein is required to exhaust all of her remedies by use of the grievance procedure. By intricate and complicated analysis, which will make the bar of a great Pennsylvania city proud, the Court twists the provisions of the CBA to reach the desired conclusion that Klein may both grieve and sue.[2]

¶47 Initially, I disagree with the Court that this case falls within the narrow exception to the rule stated in *Small* and *MacKay*. *See* ¶ 11. It is far from certain that the CBA in question is not susceptible to an interpretation that covers Counts II and IV, as well as Counts I and III, of Klein's complaint. I agree with the reasoning of the District Court set forth in ¶ 6. The CBA is intended to be a basic and complete agreement between the parties concerning terms and conditions of employment. And, as the Court notes, the CBA states that any disciplinary action may be applied through the grievance procedure.

---

[2] Philadelphia lawyer: inter alia, "a shrewd lawyer versed in the intricacies of legal phraseology and adept at exploiting legal technicalities." *Webster's Third New International Dictionary, Unabridged* 1697 (Philip Babcock Gove, ed., Merriam-Webster, Inc. 2002).

25

The CBA obviously intends that the grievance procedure could, at the very least, arguably cover all disciplinary matters, including the investigation of Klein's alleged improper actions.

¶48     The Court incorrectly interprets the CBA to say that Klein can have her cake and eat it too. Under the Court's reading of the agreement, Klein is not required to elect either the remedy of arbitration or of a civil suit, but is allowed to grieve those complaints she desires and then sue the DOC over the remainder.

¶49     The error by the Court is in ¶¶ 24-26 where it misinterprets the CBA to say that it does not require that the question of whether an employment action is arbitrable be submitted to an arbitrator. To the contrary, when arbitration was selected by Klein, she was required to submit all of her claims that are arguably within the purview of the CBA to the arbitrator, and it is the arbitrator, not a reviewing court, that makes the decision whether any such claims are arbitrable under the agreement.

¶50     The parties intended to enter into a binding agreement which is complete and covers the terms and conditions of Klein's employment. The Union and DOC agreed that they would adjust all employee disputes under the agreement. Importantly, the parties also agreed that any disputes concerning the interpretation of the CBA would be submitted to the arbitrator.

¶51     The facts as outlined by the Court make it clear that Klein's claims, including her alleged damages for deceit and for negligent infliction of emotional distress, arise from her employer's treatment of her as an employee. In the District Court and in her appellate brief in this Court, Klein acknowledges that the claim for deceit alleged in

Count II of her complaint is based upon her employer's misrepresentations leading up to and during its interview with her concerning her conduct as an employee; she also admits that the claim for negligent infliction of emotional distress alleged in Count IV of her complaint is a result of the Department's actions leading up to her discharge. There can be no doubt that these matters constitute "employment action." A reasonable interpretation of the CBA could be that these claims against Klein's employer arise out of the conditions of her employment. Klein advances another interpretation, claims the CBA is not ambiguous, and asserts that none of the claims in her complaint are arbitrable. The Court agrees in part with Klein and in part with DOC.

¶52    This is a "competing interpretations" case. The CBA is susceptible to at least two, if not three, reasonable but conflicting interpretations regarding the arbitrability of DOC's employment actions as alleged in Klein's complaint. DOC offers one interpretation and Klein offers another. The Court comes up with a third alternative and concludes that Counts I and III of her complaint were decided by the arbitrator, and thus were necessarily arbitrable, and Counts II and IV are not subject to arbitration. Under the present circumstances both the CBA itself and the rule in *Union-Scioto Loc. Sch. Dist. Bd. of Educ. v. Unioto Support Assn.*, 603 N.E.2d 375, 376 (Ohio App. 1992) (cited with approval in *Missoula Educ. Assn.*, 259 Mont. at 445, 857 P.2d at 700), dictate that when arbitration is invoked, the arbitrator, not the Court, is to interpret the agreement.

¶53    The Court notes at ¶ 16 that the CBA provides that employees desiring to contest an employment action through alternative statutory or civil procedures may not contest the same action by use of the grievance procedures. Then, at ¶ 24, the Court states that

27

nothing in the CBA says that whether a grievance is arbitrable must first be submitted to the arbitrator. This latter statement misses the obvious. Arbitration was chosen by Klein. She herself went to the arbitrator, and thus was required to submit all of her claims to arbitration, including the question of whether all of her claims are covered by the agreement. Having chosen arbitration, Klein must arbitrate all of her claims.

¶54    Klein does not deny that both the claims she made before the arbitrator and those she now makes in her complaint arise out of the same integrated set of facts. Contrary to the Court's assertions at ¶¶ 31, 38, Klein's tort claims for deceit and emotional distress are not wholly independent of the employment agreement. The only reason Klein and DOC had anything to do with each other was their employment relationship. In truth, Klein's tort claims are not wholly independent of the employment relationship. They are firmly rooted in that relationship, and thus are subject to arbitration. *Buckhorn*, 18 Cal. Rptr. 3d at 219 (citing *Vianna*, 33 Cal. Rptr. 2d at 190); *see also Tate v. Saratoga Sav. & Loan Assn.*, 265 Cal. Rptr. 440 (Cal. App. 1989) (applying arbitration clause to tort claims having their roots in the contractual relationship between the parties).

¶55    Klein chose to take her employment claims to an arbitrator, placing the interpretation of the CBA in his hands. Thus, she was contractually and legally required to have the arbitrator interpret the agreement and decide if her deceit and emotional distress claims were arbitrable under this particular CBA. She cannot now claim in a separate civil action that her tort claims are not arbitrable. *Cf. Missoula Educ. Assn.*, 259 Mont. at 445, 857 P.2d at 700; *Union-Scioto*, 603 N.E.2d at 376.

¶56 A major reason for requiring a public employer to bargain in good faith with its employees' representative is to secure a reasonably quick and inexpensive resolution of disputes for the benefit of both labor and management. There is little incentive to agree to an arbitration provision in a CBA if one must face both arbitration and a civil suit in order to finally determine an employee's rights and obligations. The CBA in question here, expressly in Article 17, Section 3E, prohibited both an arbitration proceeding and a civil lawsuit. The Court's insistence on invading the province of the arbitrator and interpreting the agreement itself not only defeats the purpose of this particular agreement, it deters both employers and unions from agreeing to arbitrate disputes. Ms. Klein may or may not ultimately be successful in this instance. However, both she and DOC now have to litigate the same facts twice. The Court's decision this day to depart from long established labor relations rules which deter multiple proceedings re-opens Pandora's Box and does mischief to both employers and employees. I dissent.

/S/ JOHN WARNER