Justice Jim Rice delivered the Opinion of the Court.
***158 ¶1 The above-named Appellants (Deere) appeal from an order entered by the Fourth Judicial District Court, Missoula County, denying their motion to compel arbitration of claims brought by Appellee Milton Anderson (Anderson). We affirm, addressing the following issue:
Did the District Court err by denying Deere's Motion to Compel Arbitration?
FACTUAL AND PROCEDURAL BACKGROUND[1]
¶2 Anderson owned an interest in Air Bozeman Rental LLP (Air Bozeman), doing business as Frontline Ag. In 2003, Air Bozeman entered a "John Deere Agricultural Dealer Agreement" (Dealer Agreement or *637 Agreement) with the John Deere Company, which established Air Bozeman as a John Deere agricultural equipment dealer, and began operating Deere dealerships in Conrad and Choteau, Montana. Prior to Air Bozeman's ownership, these dealerships had annual gross sales of under $1 million. In 2004, under Air Bozeman's operation, the dealerships achieved gross sales of over $9 million. In 2005, Anderson and others formed a new business entity, Frontline Ag, LLC (Frontline). Frontline and Deere signed an amendment to the Dealer Agreement reflecting the change in ownership of the dealerships from Air Bozeman to Frontline, and subsequent Dealer Agreements were entered in the name of Frontline. Anderson signed the Dealer Agreements as the "managing partner" of Air Bozeman and Frontline. The Dealer Agreements contained an Arbitration Clause requiring arbitration of disputes between Deere and the Dealer. Anderson also signed two personal guarantees to guarantee the financial performance of the dealerships to Deere. Anderson signed these in a personal capacity, but neither personal guarantee agreement addressed arbitration of disputes. ***159 ¶3 In early 2012, Frontline undertook negotiations lasting several months to acquire the Deere dealership in Dillon, Montana. The purchase of the Dillon dealership by Frontline was subject to Deere's approval. In May or June of 2012, Frontline representatives met with Deere representatives to obtain Deere's approval of the purchase. At the end of that meeting, a Deere representative allegedly told the Frontline representatives that before they could acquire the Dillion dealership or expand any further, Frontline needed to "get rid of McKee Anderson." The Deere representative did not provide an explanation for Deere's demand that Frontline disassociate Anderson from the company. Anderson alleges Deere preferred that a different Deere dealer, Moodie Implement Company (Moodie Implement), acquire the Dillion dealership.
¶4 Frontline had also become interested in purchasing Moodie Implement and working with Bos Terra Land & Cattle Corporation to acquire capital for the Moodie Implement purchase. In spring of 2013, Frontline representatives met with Deere representatives to discuss a purchase of Moodie Implement. Allegedly, Deere representatives reiterated to Frontline representatives that Frontline would have to oust Anderson before Deere would allow them to grow any further.
¶5 Frontline conveyed that Frontline did not want to oust Anderson, and asked a Deere representative why Deere wanted Anderson removed. The Deere representative allegedly responded simply that the issue was "done" and that Deere's mind could not be changed. It thus became clear to Frontline that Deere would not allow Frontline to grow any further until Anderson left the company.
¶6 Although Anderson did not wish to leave Frontline, he worried that his continued involvement would cause Deere to take actions that would reduce Frontline to asset value. This would deprive Anderson and Frontline's other members of the equity they had contributed to and built up in Frontline. After the members of Frontline voted not to remove Anderson, a Deere representative allegedly visited Frontline's office in Conrad and stated to a Frontline representative that unless Anderson was removed from Frontline, Deere would reduce Frontline "to assets."
¶7 Consequently, Anderson and Frontline executed a Membership Redemption Agreement (Redemption Agreement) in October 2013 to purchase Anderson's interest in Frontline and discontinue his role in the company. The Redemption Agreement provided favorable terms to Frontline for its purchase of Anderson's 18.11% interest in the company, including a price of $2,054,000-which was based upon asset value rather than fair market value-payments over time, a low ***160 interest rate, and Anderson's assumption of the risk of default. Anderson alleges he was damaged in the transaction because of the actions taken by Deere, including emotional damages.
¶8 Anderson filed this action, alleging against Deere tortious interference with contract, tortious interference with business relations and prospective economic advantage, and seeking punitive damages. Deere responded by moving the District Court to stay *638 the proceedings and compel arbitration. Deere argued that, as a guarantor to the Dealer Agreement, Anderson was bound to the Arbitration Clause in the Dealer Agreement, and was required to submit his claims to arbitration. Anderson opposed the motion, filing a cross-motion to stay the arbitration and an allied motion for a temporary restraining order and preliminary injunction. Anderson argued he was not a party to the Dealer Agreement or the Arbitration Clause because he was only a guarantor and signatory, and, in any event, the Arbitration Clause did not apply to his claims.
¶9 The District Court denied Deere's motion to compel arbitration, reasoning that "Anderson never agreed to arbitrate his claims against Defendants and they have offered no compelling reason to bind Anderson to Deere's agreement with Frontline. In the alternative, if Defendants could somehow bind Anderson, the Dealer Agreement does not require arbitration except as to disputes between Deere and Frontline, which this is not."
¶10 Deere appeals.
STANDARD OF REVIEW
¶11 This Court reviews a district court's conclusions of law regarding arbitrability to determine whether they are correct. Kalispell Educ. Ass'n v. Bd. of Trs. , 2011 MT 154, ¶ 9, 361 Mont. 115, 255 P.3d 199 ; Global Client Solutions, LLC v. Ossello , 2016 MT 50, ¶ 19, 382 Mont. 345, 367 P.3d 361.
DISCUSSION
¶12 Did the District Court err by denying Deere's Motion to Compel Arbitration?
¶13 The Deere Appellants argue that the District Court erred by ruling that Anderson's claims were not subject to arbitration for two reasons: first, Anderson signed five Dealer Agreements on behalf of Frontline in which he consented to binding arbitration of any "dispute" with John Deere, and the Arbitration Clause incorporated guarantors; and second, the particular claims themselves, as asserted in Anderson's complaint against Deere, are subject to the Arbitration ***161 Clause of the Dealer Agreements that he signed. Anderson responds, first, that he was not a party to the Dealership Agreements, as he signed them as an agent for the dealerships, and the guarantees he signed did not require arbitration; and second, even if he were a party to the Dealer Agreement, his claims do not come within the Agreement's definition of "Dispute" that require arbitration.
¶14 We begin with the premise that " 'arbitration is a matter of contract.' " Kalispell , ¶ 11 (quoting Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc ., 2009 MT 362, ¶ 25, 353 Mont. 201, 219 P.3d 881 ). In considering whether to compel the arbitration of a dispute, the Court must first determine "whether the parties agreed to arbitrate that dispute." Kalispell , ¶ 11 (citing Woodruff v. Bretz, Inc ., 2009 MT 329, ¶ 7, 353 Mont. 6, 218 P.3d 486 ). As we have noted, the United States Supreme Court has explained that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " Kalispell , ¶ 11 (citing AT&T Technologies, Inc. v. Communications Workers of Am. , 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) ). The Supreme Court has stated that, when considering the arbitrability of a dispute, courts should presume that arbitration applies if the arbitration agreement " 'is ambiguous about whether it covers the dispute at hand.' " Kalispell , ¶ 18 (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters , 561 U.S. 287, 301, 130 S.Ct. 2847, 2858, 177 L.Ed.2d 567 (2010) ).
¶15 As the parties acknowledge, the financial guarantees that Anderson signed personally on behalf of the dealerships did not address arbitration of disputes. However, the Dealer Agreements addressed arbitration, providing as follows:
XVII. Resolution of Disputes
Although Dealer and Company are entering into this Agreement in a spirit of cooperation and mutual respect, it is possible that Disputes may arise. Dealer, (including without limitation guarantors of Dealer), Company and Deere Credit, Inc., agree *639 that any Dispute shall be finally resolved by binding arbitration pursuant to the terms set forth in Exhibit 4.[2 ] The duty to arbitrate shall extend to any officer, employee, shareholder, principal, agent, partner, trustee (in bankruptcy or otherwise), or subsidiary of Dealer as to any Dispute that is subject to this Section XVII.
***162 The capitalized word, "Dispute," is a "defined term" under the Dealer Agreement, and is defined as follows:
Any dispute, controversy, or claim between Dealer and Company or Deere Credit, Inc., whether based on contract, tort, statute, or other legal theory.[3 ]
¶16 In light of Anderson's position that he was not personally a Dealer under the Agreement, Deere argues that the clause, "Dealer, (including without limitation guarantors of Dealer), Company and Deere Credit, Inc., agree that any Dispute shall be finally resolved by binding arbitration ...," also subjected Anderson, as a guarantor, to arbitration of any of his claims against Deere. However, this overstates the provision. More accurately, this clause means that Frontline's guarantors, along with Frontline as the Dealer and Deere, are all agreeing that any "Dispute"-as defined by the Agreement-will be resolved by arbitration. In other words, the clause includes a guarantor's agreement to arbitrate any of a certain category of disputes-those defined as a "Dispute" in the Agreement-but is not, under its wording, a blanket commitment by the guarantor to arbitrate any dispute he or she may have with Deere. Arbitration of a guarantor's claim will necessarily depend on whether the claim comes within the Agreement's definition of "Dispute." This is consistent with the remainder of the Arbitration Clause, which likewise provides that "[t]he duty to arbitrate shall extend to any officer, employee, shareholder, principal, agent, partner, trustee (in bankruptcy or otherwise), or subsidiary of Dealer as to any Dispute that is subject to this Section XVII " (emphasis added). The Arbitration Clause does not require arbitration of all disputes among the listed parties, but only of those "Disputes" defined in the Agreement.
¶17 "Dispute" is defined by the Agreement as "Any dispute, controversy, or claim between Dealer and Company or Deere Credit, Inc., whether based on contract, tort, statute, or other legal theory." Thus, a "Dispute" is precisely defined as those claims or controversies between "Dealer" and "Company or Deere Credit, Inc." As noted above, "Dealer" and "Company" are defined terms within the Agreement, and apply here to refer to Frontline and Deere. Thus, the Arbitration Clause is applicable to disputes between Frontline and Deere, and does ***163 not apply to other disputes between Anderson and Deere. Anderson is not Frontline, and neither his signature on the Dealer Agreements as a member or manager of Air Bozeman and Frontline, nor his personal guarantee of these dealers' financial obligations to Deere, make him so. Anderson has filed herein torts for alleged actions that Deere took against him personally, and for which personal damages were allegedly caused. Deere's reference to "tort, statute, or other legal theory" in the definition of "Dispute" notwithstanding, these terms do not apply to such claims made personally by Anderson against Deere.
¶18 We recognize that " '[s]tate and federal policies generally favor arbitration when a valid arbitration agreement exists between the parties.' " Kalispell , ¶ 18 (quoting Higgins Dev. Partners, LLC v. Skanska U.S.A. Bldg., Inc. , 2009 MT 287, ¶ 19, 352 Mont. 243, 216 P.3d 199 (citing the Federal Arbitration Act, 9 U.S.C. §§ 1 - 16 (2006), and AT&T Techs. , 475 U.S. at 650, 106 S.Ct. at 1419 ) ). Deere relies on Kalispell, arguing that because this Court resolved doubts of arbitrability in favor of arbitration in that case, we should do the same in this instance. Similarly, we have recognized that, if an arbitration clause is ambiguous, giving rise to a *640 presumption in favor of arbitration, then "arbitration of a grievance 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' and doubts are 'resolved in favor of coverage.' " Kalispell , ¶ 21 (citing AT&T Technologies , 475 U.S. at 650, 106 S.Ct. at 1419 ). However, there is no doubt or ambiguity here. It can be "said with positive assurance" that, under its plain wording, the Arbitration Clause does not incorporate Anderson's personal damage claims within its definition of disputes subject to mandatory arbitration.
¶19 Affirmed.
We concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
JAMES JEREMIAH SHEA, J.
¶20 I disagree with the Court's conclusion that "Dispute," a general term, controls the express and more specific terms of the Arbitration Clause. The Arbitration Clause requires arbitration of "[a]ny dispute, controversy , or claim " between Dealer-"including without limitation guarantors of Dealer"-and John Deere, "whether based on contract, tort , statute, or other legal theory." (Emphasis added). The Arbitration Clause provides that "[t]he duty to arbitrate shall extend to any officer, employee, shareholder, principal, agent, partner, trustee (in bankruptcy or otherwise), or subsidiary of Dealer as to any Dispute that is subject to this [Arbitration Clause]." Anderson became a ***164 "guarantor" when he executed two guarantees in favor of John Deere to secure the dealership on behalf of Frontline Ag. Anderson also identified himself as Frontline Ag's "Manager" or "Managing Partner" in three Dealer Agreements that he signed. The Federal Arbitration Act applies to contracts that involve interstate commerce, such as here, and both federal and Montana law impose a presumption in favor of arbitration when there are any doubts about arbitrability. See 9 U.S.C. §§ 1 - 2 ; Kalispell , ¶ 18. In my opinion, the Court misconstrues the express provisions of the five agreements; ignores that the provisions can be consistently construed together to give effect to each; fails to give proper deference to the presumption of arbitrability; and ignores that the Arbitration Clause is an example of a "broad," as opposed to "narrow," arbitration clause. See Klein v. State , 2008 MT 189, ¶ 27, 343 Mont. 520, 185 P.3d 986.
¶21 I also disagree that the types of claims Anderson asserts are not "dispute[s], controvers[ies], or claim[s]" covered by the Arbitration Clause. Anderson's claims allege torts and "tort[s]" are expressly incorporated into the Arbitration Clause. The "dispute[s], controvers[ies], or claim[s]" between Deere and Anderson arise out of Deere's contractual right to exercise control over whether Frontline Ag, when Anderson was both a guarantor and a manager, could acquire a competing dealership. Each of the Agreements provided that Deere, "in its sole discretion, shall have the right to reject" or "disapprove" additions to Frontline Ag's areas of representation. According to Anderson, Deere would not permit Frontline Ag to purchase another dealership as long as Anderson remained a member. Anderson alleges Deere's exercise of Deere's right to control dealership expansion coerced Anderson to sell his ownership interest to prevent further harm to Frontline Ag. The dispute culminated in Anderson executing a Membership Redemption Agreement to Frontline Ag in October 2013, rather than resolving the underlying dispute through arbitration with Deere. In my opinion, this was a dispute or controversy that arose directly from Deere's right to control expansion-a right expressly provided for in each of the Dealer Agreements. I disagree with the Court's conclusion that the dispute, because it was made "personally by Anderson against Deere," Opinion, ¶ 17, is not the type of dispute covered by the Arbitration Clause. The alleged conduct of Deere upon which Anderson bases his claims, in fact, is expressly contemplated by the Agreement.
¶22 Although, in my opinion, the Court has misconstrued the law and applied it incorrectly *641 to the facts of this case, I would nonetheless conclude-pursuant to a simpler rationale-that Anderson is not ***165 bound by the Arbitration Clause. In October 2013, when he redeemed his ownership interest to Frontline Ag, Anderson ceased being a "guarantor," "manager," or "managing partner" of Frontline Ag. Deere now seeks to enforce arbitration through a contract it has with Frontline Ag-a contract which previously bound Anderson when he had an ownership interest but no longer does. From my review of the contracts, I have not found any provisions which would prospectively apply the Agreement to ex-guarantors or ex-managers, nor have any provisions been cited by the parties. Although the original dispute culminating in the Membership Redemption Agreement was "personal" to Anderson, Opinion, ¶ 21, it nonetheless would have been subject to arbitration had Deere asserted its right under the Agreement . As the only issue here is arbitrability of Anderson's claims, the Court is not privy to any of the circumstances surrounding the Membership Redemption Agreement and Deere's participation, if any, in the resolution of the problem. Nonetheless, the termination of Anderson's ownership interest in Frontline Ag extinguished Anderson's obligations under the Dealer Agreements to arbitrate. Anderson is no longer the Dealer; nor is he a guarantor, partner, shareholder, principal, or manager of the Dealer.
¶23 The facts giving rise to this litigation are curious. The Agreement controls Deere's relationship only with Frontline Ag and other persons having particularly identified interests in Frontline Ag. The Agreement limits damages and waives the right to a jury trial. By selling his ownership interest in Frontline Ag, Anderson is no longer bound by the Agreement and is free to pursue a claim in court which otherwise would have been arbitrated. The Arbitration, Limitations on Damages, and Jury Waiver clauses are no longer enforceable against Anderson.
¶24 I suspect we have not heard the last of this "Dispute."

The facts stated herein are taken from allegations made in the litigation for purposes of the arbitration issue only.

Exhibit 4 set forth the rules for an arbitration proceeding.

Though their meaning is not contested here, the terms "Dealer" and "Company" are also defined terms under the Dealer Agreements. "Dealer" is defined as the "Dealer identified in this Agreement," which the Agreement identifies as "Frontline Ag." "Company" is defined as "John Deere Company: A Division of Deere & Company."